UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TALAVERA HAIR PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TAIZHOU YUNSUNG ELECTRICAL APPLIANCE CO., LTD, et al, <br><br> Defendants. | Case No.: 18-CV-823-JLS (JLB) <br><br> **ORDER (1) GRANTING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER; (2) SETTING PRELIMINARY INJUNCTION HEARING AND BRIEFING SCHEDULE** <br><br> (ECF No. 9) |

Presently before the Court is Plaintiff Talavera Hair Products, Inc.'s Ex Parte Application for Entry of Temporary Restraining Order and Preliminary Injunction, ("TRO App.," ECF No. 9). For the reasons set forth below, the Court **GRANTS** Plaintiff's Application for Entry of Temporary Restraining Order.

## BACKGROUND

On April 30, 2018, Plaintiff filed a complaint against Defendants Taizhou Yunsung Electrical Appliance Company, LTD and against the Individuals, Partnerships, and

Unincorporated Associations Identified on Exhibit "1". ("Compl.," ECF No. 1).[1] Plaintiff concurrently filed the instant Ex Parte Application, along with a Request for Judicial Notice, the Declaration of Victor Talavera, the Declaration of Darren J. Quinn, and the Declaration of Jerold I. Schneider, along with various exhibits.

Plaintiff is a corporation that sells a product called the Split-Ender "that quickly and easily trims split ends from hair." (*Id.* ¶ 13.) Plaintiff owns copyrights, trademark rights, and patent rights regarding the product. (*Id.* ¶ 16.) Plaintiff owns registered copyrights for its packaging (VA 2-092-823) and for its manual (VA 2-093-2090). ("Talavera Decl.," ECF No. 6-11, ¶ 2.) Plaintiff owns Trademark Registration Number 2,645,923 for "Split-Ender" for "Electric and battery-operated hair trimmers for the removal of split and damaged hair ends; scissors, razors and electric shavers." (*Id.*) Plaintiff "claims non-registered trade dress rights with respect to its packaging and non-registered trademark rights with respect to source identifying names (*e.g.* Talavera) and short phrases (*e.g.* "SNIPS THE ENDS, NOT THE LENGTH")." (TRO App. 2 (citing Talavera Decl. ¶ 2).) Plaintiff also owns three United States Patents: Patent No. US 6,588,108; Patent No. US 7,040,021; and Patent No. US 9,587,811. (Talavera Decl. ¶ 2.)

Plaintiff's product is sold on, among other places, Amazon.com and eBay.com. (TRO App. 2.) Plaintiff claims Defendant Taizhou and 78 other Defendants (the Seller ID Defendants) "are infringers of Plaintiff's copyrights, trademark rights, and patent rights who manufactured, advertised, and/or sold knock-offs of Plaintiff's Split-Ender® product via Internet marketplace platforms – Amazon.com or eBay.com." (*Id.* at 9.) Defendant Taizhou is the manufacturer of the infringing products. The Seller ID Defendants offer for sale and sell allegedly infringing goods through Amazon.com or eBay.com using Amazon or eBay seller identities. (*Id.* at 3.)

---

[1] Exhibit 1 can be found at ECF No. 1-3 and attached to the conclusion of this Order. The Defendants listed on the Exhibit will be referred to as "Seller ID Defendants." The listed Seller IDs of the Seller ID Defendants are the seller identification names used on Amazon.com or eBay.com.

Plaintiff filed the present Motion requesting the Court issue a temporary restraining order ("TRO"), and upon expiration of the TRO, a preliminary injunction against Defendants. Plaintiff requests the Court issue a TRO without providing notice to Defendants.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs the issuance of temporary restraining orders ("TRO").

### I. Ex Parte Application for TRO

A court may only issue a TRO without notice to the adverse party if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). Further, "[e]very temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record." Fed. R. Civ. P. 65(b)(2). The Supreme Court has held, "[e]x parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974).

Ex parte TROs "may be appropriate 'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (9th Cir. 1984)). If notice could have been given, "courts have recognized 'a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render

fruitless the further prosecution of the action.'" *Id.* (quoting *Am. Can Co.*, 742 F.2d at 322). One example of such a situation is "where an alleged infringer is likely to dispose of the infringing goods before the hearing." *Id.* To show this, "plaintiffs must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing . . . [and] must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history." *Id.* (internal quotations omitted) (quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993).

## II.  Temporary Restraining Order

The standard for a temporary restraining order is identical to the standard for a preliminary injunction. *Frontline Med. Assocs., Inc. v. Coventry Healthcare Worker's Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009). A plaintiff seeking preliminary relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The elements of this test are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for Wild Rockies v. Cottrell,* 622 F.3d 1045, 1049–50 (9th Cir. 2010), *rev'd on other grounds*, 632 F.3d 1127 (9th Cir. 2011). Generally, a temporary restraining order is considered to be "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## ANALYSIS

## I.  TRO Without Notice

The Court first analyzes whether the TRO is appropriate on an ex parte basis.

### A.  *Impossibility of Notice for Some Seller ID Defendants*

Plaintiff argues it is impossible to give notice to all Defendants because Plaintiff does not have email addresses for many of the Amazon Seller ID Defendants. (TRO App. 14.) Plaintiff requests as part of its relief that the Court order Amazon to provide current

email addresses for the Seller ID Defendants so that the Defendants can be noticed. (*Id.* at 14–15.) The Court agrees that it is impossible for Plaintiff to provide notice to those Defendants for whom it does not have any contact information.

### B. Notice Would Render Further Prosecution Fruitless

Plaintiff argues "[p]roviding notice to the Defendants infringing on Amazon.com and eBay.com would 'render further prosecution fruitless.'" (TRO App. 12 (citing *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO (EX), 2015 WL 6680807, at *1 (C.D. Cal. Oct. 19, 2015)). This is because: (1) Defendant Taizhou has already "disregarded a consent court order in China to not infringe" and therefore has a history of violating court orders; (2) Seller ID Defendants have evaded infringement enforcement by re-listing infringing items under different Amazon ASIN numbers, eBay auctions, or Seller IDs; (3) Persons similar to Defendants, in other cases, have a history of evading infringement; (4) The Seller ID Defendants do business through their Amazon or eBay Seller ID names which provide them with anonymity; (5) Plaintiff has already sent "cease and desist notices to Amazon and eBay identifying infringing items separately offered for sale by the Seller ID Defendants." Plaintiff also sent letters to the Defendants at the email addresses it has for them. (*See* ECF No. 6-16.) Plaintiff states Defendants are therefore aware they are dealing with infringing products; (6) Because "the Internet-based e-commerce stores and Seller IDs at issue are under Defendants' complete control, Defendants have the ability to modify e-commerce store data and content, redirect consumer traffic to other seller identification names, change payment accounts, and transfer assets and ownership of the Seller ID"; and (7) "Defendants can also easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiff's TRO." (*Id.* at 12–14.)

### C. Analysis

As to Defendant Taizhou, Plaintiff has provided sufficient evidence that notice would render prosecution fruitless. After engaging in mediation in China, the Parties agreed that Taizhou would terminate all acts which infringe Plaintiff's patent. (*See* ECF

No. 6-12.) Plaintiff states that Taizhou still manufactures and sells infringing products called "FASIZ," "HAIR TRIMMER," "UMATE," and "LESCOLTON." (Talavera Decl. ¶¶ 7–9.) Plaintiff states Taizhou has therefore directly disregarded the China court order by selling infringing products. Given that Taizhou has failed to heed a court order in the past, the Court finds Plaintiff has shown that notice to Taizhou in this matter would render further prosecution fruitless.

As to the Seller ID Defendants, Plaintiff states it "has spent an enormous amount of time and effort sending infringing cease and desist notices to Amazon and eBay regarding items sold by Seller ID Defendants." (Talavera Decl. ¶ 11.) When contacted, Amazon and eBay sometimes remove an infringing item, but "new infringements continued under different Amazon ASIN numbers or eBay auctions or even under different Seller IDs." (*Id.* ¶¶ 11–13.) Amazon supplied Plaintiff with some email addresses to communicate with Seller ID Defendants directly. (*Id.* ¶ 15.) Plaintiff then sent cease and desist letters to these email addresses. (*See* ECF No. 6-16.)

Plaintiff has pointed to nine different cases in other districts where temporary restraining orders have been granted in similar circumstances against similar Seller ID Internet infringers who used Amazon.com and eBay.com to sell infringing products. (ECF Nos. 6-1 to 6-10.)[2] This shows that other courts have determined that temporary restraining orders are warranted against defendants similar to the Seller ID Defendants in this case; thus, this shows that "persons similar to" the Seller ID Defendants have "a history of disposing of evidence or violating court orders." *See Reno Air Racing*, 452 F.3d at 1131.

The Court finds that notice to Defendants would likely result in the disappearance or transfer of the counterfeit products. Notice would "jeopardize Plaintiff's ability to prevent irreparable injury, to stop the distribution of the counterfeit [products], and to determine the source and extent of the Defendants' dealings in the counterfeit . . . products." *See SATA GmbH*, 2015 WL 6680807, at *5 (finding the same). Therefore,

---

[2] Plaintiff requests the Court take judicial notice of these orders. The Court **GRANTS** the request.

Plaintiff has proven that "immediate and irreparable injury, loss, or damage will result" due to the potential loss of products and funds if Defendants were given notice. Fed. R. Civ. P 65(b)(1).[3] Plaintiff has met its burden in proving why notice should not be required, and that notice is impossible to some Defendants given that they operate anonymously via the Internet and cannot promptly be served before a noticed hearing. Thus, Plaintiff may proceed on an ex parte basis.

## II. Temporary Restraining Order

As noted above, a plaintiff seeking a TRO must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20.

Having reviewed the materials submitted, the Court is satisfied that Plaintiff has met its burden under *Winter*. The Court finds Plaintiff has proven it has a likelihood of success on its infringement claims for its copyright, trademark, and patents. Plaintiffs have also convincingly argued that Defendants' alleged infringement and counterfeiting have and will continue to result in lost customers and damage to Plaintiff's goodwill and business reputation, which are irreparable injuries. Further, the balance of equities tip in favor of granting an injunction, and an injunction is in the public interest.

## CONCLUSION AND ORDERS

<u>Preliminary Injunction Hearing and Orders</u>

1.  The Court **GRANTS** Plaintiff's Ex Parte Application for a Temporary Restraining Order as detailed below. The parties are **HEREBY ORDERED** to appear for a preliminary injunction hearing <u>on May 31, 2018 at 9:30 a.m.</u> in Courtroom 4D of the United States Courthouse located at 221 West Broadway, San Diego, CA, 92101, at which time this TRO **SHALL EXPIRE**. At this time, Defendants and/or any other affected

---

[3] Plaintiff's attorney has filed a declaration detailing why he believes notice to Defendants would be impossible and that Defendants would significantly alter the status quo before the Court can determine the parties' respective rights were they given notice. (ECF No. 9-23).

persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction.

2. Any response or opposition to Plaintiff's Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel <u>on or before May 18, 2018</u>. Plaintiff shall file any Reply Memorandum <u>on or before May 25, 2018</u>. The above dates may be revised upon stipulation by all parties and approval of this Court.

3. Defendants are cautioned that failure to attend the preliminary injunction hearing may result in confirmation of the relief provided herein, immediate issuance of the requested preliminary injunction to take effect immediately upon expiration or dissolution of the TRO, and may otherwise extend for the pendency of this litigation upon the same terms and conditions that comprise this TRO.

4. After Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall serve a copy of the Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant via their corresponding e-mail address, or on each Defendant via their corresponding online contact form provided on the e-commerce stores operating under the Seller IDs, or by providing a copy of this Order by e-mail to the marketplace platform for each of the Seller IDs so that the marketplace platform, in turn, notifies each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.  In addition, Plaintiff shall post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website located at http://federallawsuitnotice.com and shall provide the website address and a link to the website to the Defendants via e-mail/online contact form.  Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to the Defendants by regularly updating the website located at

http://federallawsuitnotice.com, or by other means reasonably calculated to give notice which is permitted by the Court; [4]

5. Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace platforms, including but not limited to, Amazon.com and eBay.com, and/or financial institutions, payment processors, banks, escrow services, and money transmitters, including but not limited to, Amazon Payments, Inc. ("Amazon"), and PayPal, Inc. ("PayPal"), and their related companies and affiliates shall, at Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with the Defendants' respective Seller IDs.

Temporary Restraining Order

6. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained:

> a. from making, manufacturing or causing to be manufactured, importing, using, advertising or promoting, distributing, selling or offering to sell split end hair trimmer products (including split end hair trimmer products marked "FASIZ," "HAIR TRIMMER," "UMATE" or "LESCOLTON") that infringe:
>
> > (i) Patent No. US 6,588,108 issued July 8, 2003 for HAIR TRIMMING DEVICE WITH REMOVABLY MOUNTABLE COMPONENTS FOR REMOVAL OF SPLIT ENDS AND STYLING OF HAIR (the "'108 Patent");
> >
> > (ii) Patent No. US 7,040,021 issued May 9, 2006 for HAIR TRIMMING DEVICE WITH REMOVABLY MOUNTABLE

---

[4] Plaintiff states it has a physical address for defendant Taizhou. (ECF No. 9-23, ¶ 21.) Plaintiff is to serve Defendant Taizhou with the documents listed above at this address or inform the Court why this is not possible or worthwhile.

    COMPONENTS FOR REMOVAL OF SPLIT ENDS AND STYLING OF HAIR (the "'021 Patent"); or

    (iii) Patent No. US 9,587,811 issued May 9, 2006 for HAIR TRIMMING DEVICE (the "'811 Patent").

  b. from reproducing, distributing or transferring Defendants' existing split end hair trimmer packaging marked "FASIZ," "HAIR TRIMMER," "UMATE" or "LESCOLTON" or from infringing any of the exclusive rights in 17 U.S.C. §106 with respect to Plaintiff's copyrighted packaging or from using Plaintiff's distinctive trade dress packaging on Defendants' packaging.

  c. from reproducing, distributing or transferring Defendants' existing split end hair trimmer manual marked "FASIZ," "HAIR TRIMMER," "UMATE" or "LESCOLTON" or from infringing any of the exclusive rights in 17 U.S.C. §106 with respect to Plaintiff's copyrighted manual, including reproducing, creating derivative works, displaying or distributing Plaintiff's manual;

  d. from infringing, counterfeiting, or diluting Plaintiff's registered Split-Ender® trademark;

  e. from secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any split end hair trimmer products, packaging or manuals that infringe Plaintiff's patents, trademarks or copyrights; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any any split end hair trimmer products, packaging or manuals that infringe Plaintiff's patents, trademarks or copyrights.

  7. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue any infringing use of Plaintiff's copyrights, trademarks, trade dress, or patents, on or in connection with all Internet-based

e-commerce stores owned and operated, or controlled by them, including the Internet-based e-commerce stores operating under the Seller IDs;

8. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue any infringing use of Plaintiff's registered Split-Ender® trademark or Plaintiff's unregistered source identifying names (*e.g.*, TALAVERA) or short phrases (*e.g.*, "SNIPS THE ENDS, NOT THE LENGTH") within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet-based e-commerce stores registered, owned, or operated by any Defendant, including the Internet-based e-commerce stores operating under the Seller IDs;

9. Each Defendant shall not transfer ownership of the Internet-based e-commerce stores under their Seller IDs during the pendency of this action, or until further order of the Court;

10. Each Defendant shall preserve copies of all computer files relating to the use of any of the Internet-based e-commerce stores website businesses under their Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Internet-based e-commerce stores under their Seller IDs that may have been deleted before the entry of this Order;

11. Upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction shall immediately cease facilitating access during the pendency of this action to any and all listings and associated images of Defendants' split-end hair trimmer products, packaging and manuals used by the Defendants via the e-commerce stores operating under their respective Seller IDs;

12. Upon receipt of notice of this Order, all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms,

including, but not limited to, Amazon, and PayPal, and their related companies and affiliates shall (i) immediately identify all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs and/or the e-mail addresses identified on Exhibit "1" hereto, as well as any other related accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the exact same financial institution account(s) or any of the other financial accounts subject to this Order; and (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

13. Upon receipt of notice of this Order, all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, Amazon and PayPal, and their related companies and affiliates, shall further, <u>within five business days of receiving this Order</u>, provide Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identifies the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. Such restraining of the funds and the disclosure of the related financial institution account information shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon and PayPal, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

14. This Order shall apply to the Seller IDs, associated e-commerce stores, and any other seller identification names, e-commerce stores, or financial accounts which are

being used by the Defendants for the purpose of infringing Plaintiff's copyrights, trademark rights or patent rights at issue in this action and/or unfairly competing with the Plaintiff;

15. Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

16. This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth above, or until such further dates as set by the Court or stipulated to by the parties.

Bond

17. Plaintiff **SHALL POST** a corporate surety bond, cash, certified check, or attorney's check in the amount of ten thousand dollars ($10,000) as security, determined adequate for the payment of such damages as any person may be entitled to recover as a result of wrongful restraint hereunder. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

**IT IS SO ORDERED.**

Dated: May 10, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge