UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TALAVERA HAIR PRODUCTS, INC., a Nevada corporation,<br><br>                                    Plaintiff,<br><br>v.<br><br>TAIZHOU YUNSUNG ELECTRICAL APPLIANCE CO., LTD., a business entity; and THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON EXHIBIT "1,"<br><br>                                    Defendants. | Case No.: 18-CV-823 JLS (JLB)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND/OR SUMMARY JUDGMENT AGAINST DEFAULTED DEFENDANTS AND (2) GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**<br><br>(ECF Nos. 111–113) |

Presently before the Court are Plaintiff Talavera Hair Products, Inc.'s Motion for Default Judgment and/or Summary Judgment Against Defaulted Defendants[1] ("Mot.,"

---

[1] The "Defaulted Defendants" are those against whom Plaintiff secured an entry of default on February 21, 2019, minus those who have since been dismissed, namely: allforyoushopper.usa (3), ANIMON (4), anothercloud (5), Aosend (6), AoStyle (7), AuPolus (8), Beisirui Hair Store (11), Cai ming zhil (12), Ciao Fashion (14), Enjoy&Life (19), Fosen Man (20), Georgy's Store (22), Hairsmile (24), Judi Shop (26), Kosmasl (27), Lanmpu Creative (31), MKLOPED (32), Mokshee Mokshee/Donop (34), MyBeautyCC (35), NewPollar (37), Olungts US (39), Puck Du/SmartGo (40), PUTOS (41), SunNatural/SunNature (44), Turritopsis nutricula (45), Ukliss Beauty (46), Wsduos (47), Yara-Yarn (48), Noledo (51), nantongaotaiguoji Trading Co Ltd (52), Beskol (53), Chunhet (54), Funny Fala (55), Huixin Economic

ECF No. 111), Supplemental Brief re: Personal Jurisdiction over Defaulted Defendants ("Supp. Br.," ECF No. 112), and Request for Judicial Notice of Default Judgments and Permanent Injunctions Involving "Seller ID" Defendants Using Amazon and eBay ("RJN," ECF No. 113). No Defaulting Defendant has filed a response to Plaintiff's Motion. The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 115. Having carefully considered Plaintiff's Complaint ("Compl.," ECF No. 1), Plaintiff's arguments and evidence, and the law, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion, as set forth below, and **GRANTS** Plaintiff's supporting Request for Judicial Notice.

## BACKGROUND

"Plaintiff sells a unique and revolutionary patented product under the federally registered trademark Split-Ender® that quickly and easily trims split ends from hair." Compl. ¶ 13. "Plaintiff owns copyrights, trademark rights, and patent rights regarding its Split-Ender® product." *Id.* ¶ 16. On April 30, 2018, Plaintiff filed the instant litigation against dozens of entities and individuals for copyright infringement pursuant to 17 U.S.C. §§ 101 *et seq.*; unfair competition pursuant the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement pursuant to 15 U.S.C. § 1114; and infringement of Plaintiff's U.S. Patents Nos. 6,588,108, 7,040,021, and 9,587,811 (collectively, the "U.S. Patents") pursuant to 35 U.S.C. § 271(a). *See generally* Compl. Plaintiff alleges that Defendants "had full knowledge of Plaintiff's copyrights, trademark rights and/or patent rights," *id.* ¶ 20, but nonetheless "Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's Split-Ender® hair trimmers in interstate commerce that infringe Plaintiff's copyrights, trademark rights, and patent rights" on Amazon and/or eBay. *Id.* ¶ 21; *see also id.* Ex. 1.

---

(56), NeSexy (57), Samantha Bowen (58), Vanylihair (60), YokEnjoy (61), BEAUTYDESIGN (75), and S*SHOME (78). *See generally* ECF No. 111. The number in parentheses after each Defendant's name is the "Defendant Number." *See id.* Although the Motion references 41 Defaulted Defendants, a Consent Judgment was entered as to Defendant No. 36, Namo Shop, subsequent to the filing of the Motion. *See* ECF Nos. 116, 117.

On May 3, 2018, Plaintiff filed a motion for a temporary restraining order ("TRO"). *See* ECF No. 9. On May 10, 2018, the Court granted Plaintiff's motion. *See* ECF No. 10. The Court enjoined "[e]ach Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order" "from making, manufacturing, or causing to be manufactured, importing, using, advertising or promoting, distributing, selling or offering to sell split end hair trimmer products . . . that infringe" the U.S. Patents, *id.* at 9–10; "from infringing any of the exclusive rights in 17 U.S.C. § 106 with respect to Plaintiff's copyrighted packaging or from using Plaintiff's distinctive trade dress packaging on Defendants' packaging," *id.* at 10; from infringing Plaintiff's copyrighted manual, *id.*; and "from infringing, counterfeiting, or diluting Plaintiff's registered Split-Ender® trademark," *id.* The TRO was extended and remains in place. *See* ECF No. 57 at 2.

On May 23, 2018, Plaintiff filed a motion requesting authorization for alternative service. *See* ECF No. 18. On May 24, 2018, the Court granted Plaintiff's motion, authorizing service by e-mail and website publication. *See generally* ECF No. 19. On May 31, 2018, Plaintiff filed a Proof of Service of Summons and Complaint on Defendants 1, 2, 3, 4, 5, 6, 7, 8, 11, 12, 14, 15, 16, 19, 20, 21, 22, 24, 25, 26, 27, 29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 43, 44, 45, 46, 47, 48, 75, 76, 77, and 78. *See* ECF No. 25. On September 27, 2018, Plaintiff filed a Proof of Service of Summons and Complaint on Defendants 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, and 61. *See* ECF No. 60. Subsequently, Plaintiff filed a Request for Clerk's Entry of Default as to the Defaulted Defendants, *see* ECF No. 63, which the Clerk entered on February 21, 2019, *see* ECF No. 65.

On March 16, 2020, Plaintiff initially filed the present Motion. *See* ECF No. 98. The Court took the matter under submission, *see* ECF No. 101, and on November 5, 2020, the Court denied the Motion without prejudice and requested supplemental briefing on the Court's personal jurisdiction over the Defaulted Defendants. *See* ECF No. 110. Plaintiff subsequently refiled the Motion, *see* ECF No. 111, along with the requested Supplemental Brief, *see* ECF No. 112, and its supporting Request for Judicial Notice, *see* ECF No. 113.

On March 4, 2021, the Court granted in part and denied in part Plaintiff's Motion for Partial Summary Judgment as to Defendant Taizhou Yungsung Electrical Appliance Co., Ltd. ("Taizhou"). *See* ECF No. 118 (the "MSJ Order").

## REQUEST FOR JUDICIAL NOTICE

As an initial matter, in support of its Motion for Default, Plaintiff requests judicial notice of nine court orders granting default judgment and awarding permanent injunctive relief. *See generally* RJN. "Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)–(2)). "Accordingly, '[a] court may take judicial notice of matters of public record.'" *Id.* (alteration in original) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). "But a court cannot take judicial notice of disputed facts contained in such public records." *Id.* (quoting *Lee*, 250 F.3d at 689).

Because "filings and orders in other court proceedings[] are judicially noticeable for certain purposes, such as to demonstrate the existence of other court proceedings," *Missud v. Nevada*, 861 F. Supp. 2d 1044, 1054 (N.D. Cal. 2012) (citing Fed. R. Evid. 201), *aff'd*, 520 F. App'x 534 (9th Cir. 2013), the Court finds it appropriate to judicially notice the existence of orders from other courts that on their face purport to grant motions for default judgment and permanent injunctive relief. Accordingly, the Court **GRANTS** Plaintiff's Request for Judicial Notice.

## MOTION FOR DEFAULT JUDGMENT AND/OR SUMMARY JUDGMENT

### I. Legal Standards

#### A. *Default Judgment*

Federal Rule of Civil Procedure 55 permits a court to enter default judgment upon a party's application. Although default judgments are ordinarily disfavored, a court may grant or deny a motion for default judgment at its discretion. *See Alan Neuman Prods.,*

*Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (citing *Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)).

The Ninth Circuit has set out seven factors, known as the *Eitel* factors, that a court may consider when exercising its discretion as to whether or not to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

When weighing these factors, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *see also* Fed. R. Civ. P. 8(b)(6). To prove damages, a plaintiff may submit declarations, or the Court may hold an evidentiary hearing. *See Affinity Grp., Inc. v. Balser Wealth Mgmt., LLC*, No. 05CV1555 WQH (LSP), 2007 WL 1111239, at *1 (S.D. Cal. Apr. 10, 2007); *see also Taylor Made Golf Co. v. Carsten Sports*, 175 F.R.D. 658, 661 (S.D. Cal. 1997) ("In assessing damages, the court must review facts of record, requesting more information if necessary, to establish the amount to which plaintiff is lawfully entitled upon judgment by default.").

### B.  Summary Judgment

Under Federal Rule of Civil Procedure 56(c), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(a)). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (citation omitted). "This is true, even when the party against whom the motion for summary judgment is directed has not filed any opposition." *Cristobal v. Siegel*, 26 F.3d 1488, 1495 (9th Cir. 1994). "[W]here no evidence is presented in opposition to the motion, summary judgment should not be granted if the evidence in support of the motion is insufficient." *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 967 (9th Cir. 1981)

### C. *Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b)*

Pursuant to Federal Rule of Civil Procedure 54(b):

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

In exercising this discretion, the court "must take into account judicial administrative interests as well as the equities involved." *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446

6

18-CV-823 JLS (JLB)

U.S. 1, 8 (1980).  "Partial judgment under Rule 54(b) is proper where there are *distinct and severable claims* and immediate review of the portions ruled upon will *not* result in later *duplicative* proceedings in the trial or appellate court."  Judge Virginia A. Phillips & Judge Karen L. Stevenson, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial* Ch. 14-J § 14:382 (Apr. 2020 update) (emphases in original) (citing *Wood v. CGC Bend, LLC*, 422 F.3d 873, 878–79 (9th Cir. 2005); *Lowery v. Federal Express Corp.*, 426 F.3d 817, 821–22 (6th Cir. 2005); *U.S. Citizens Ass'n v. Sebelius*, 754 F. Supp. 2d 903, 925–26 (N.D. Ohio 2011)).  Nevertheless, judgments under Rule 54(b) are not routinely granted and "must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties."  *Morrison–Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981).

## II.  Analysis

### A.  *Jurisdiction*

#### 1.  *Subject-Matter Jurisdiction*

To enter default judgment, the Court must first determine that it has subject-matter jurisdiction.  *See Twitch Interactive, Inc. v. Johnston*, No. 16-cv-03404-BLF, 2019 WL 3387977, at *3 (N.D. Cal. July 26, 2019).  Here, the Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1338 (patents, copyrights, and trademarks) and 15 U.S.C. § 1121 (Lanham Act trademark and unfair competition).  *See generally* Compl.

#### 2.  *Personal Jurisdiction*

The Court must also have personal jurisdiction over the defendants, or else entry of default judgment is void.  *Veeck v. Commodity Enters., Inc.*, 487 F.2d 423, 426 (9th Cir. 1973).  When a default judgment is sought over an absent defendant, a district court "has an affirmative duty" to determine whether it has personal jurisdiction over that defendant. *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999).  "It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant."  *Doe v. Unocal Corp.*, 248 F.3d 915, 922

(9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017).

a.    Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Pursuant to the Federal Rules of Civil Procedure, an individual or corporation "may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Service under Rule 4(f)(3) must be directed by the court, not prohibited by international agreement, and comport with constitutional notions of due process. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–16 (9th Cir. 2002). It is within the Court's discretion "to craft alternate means of service." *Id.* at 1016.

Here, the Court approved Plaintiff's request to serve the Defaulted Defendants via e-mail and website publication. *See generally* ECF No. 19. The Court ordered Plaintiff to ensure that each e-mail notified the relevant Defendant that a suit had been filed against it and provide a link to the website www.federallawsuitnotice.com. *Id.* at 2. The Court ordered Plaintiff to serve any Defendant for whom it had a physical address by mail as well. *Id.* As relevant to the present Motion, Plaintiff served Defendants Number 3, 4, 5, 6, 7, 8, 11, 12, 14, 19, 20, 22, 24, 26, 27, 31, 32, 34, 35, 37, 39, 40, 41, 44, 45, 46, 47, 48, 75, and 78 by e-mail and website publication on May 24, 2018. *See* 1st POS at 1; *see also id.* Exs. B, C. As relevant to the present Motion, Plaintiff served Defendants Number 51, 52, 53, 54, 55, 56, 57, 58, 60, and 61 by e-mail and website publication on September 25, 2018. *See* 2d POS at 1; *see also* ECF No. 19 Exs. B–C. Accordingly, the Court concludes that service on the Defaulted Defendants was proper pursuant to the Federal Rules of Civil Procedure and by order of this Court.

/ / /

/ / /

b.     Personal Jurisdiction

"A Court's power to exercise jurisdiction over a party is limited by both statutory and constitutional considerations." *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1135 (S.D. Cal. 2018).  In accordance with Federal Rule of Civil Procedure 4(k)(1)(A), "[f]ederal courts apply state law to determine the bounds of the jurisdiction over a party." *Williams*, 851 F.3d at 1020 (citing Fed. R. Civ. P. 4(k)(1)(A)). "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  A defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Under the minimum contacts test, jurisdiction can be either "specific" or "general." *Unocal,* 248 F.3d at 923.  Specific jurisdiction exists "where the cause of action arises out of or has substantial connection to the defendant's contact with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002). General jurisdiction depends on the defendant's "substantial, continuous and systematic" contacts with the forum, "even if the suit concerns matters not arising out of his contacts with the forum." *Id.*

Federal Circuit law is applied when the inquiry into personal jurisdiction is "intimately involved with substance of the patent laws." *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).  Accordingly, whether the Court has personal jurisdiction over Plaintiff's patent infringement claim against nonresident defendants is controlled by Federal Circuit law. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994). However, Plaintiff's remaining claims for copyright infringement, unfair competition, and trademark infringement are not "intimately involved" with patent law, and thus Ninth Circuit law governs the personal jurisdiction analysis for these claims. *See Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003).

/ / /

"Both Federal Circuit and Ninth Circuit law agree that when a district court's decision on a personal jurisdiction question is based on submitted evidence in the absence of an evidentiary hearing, the plaintiff need only make a *prima facie* showing that the defendant is subject to personal jurisdiction." *Deckers Outdoor Corp. v. Reed Sportswear Mfg. Co.*, No. 215CV00749, 2015 WL 5167466, at *2 (C.D. Cal. Sept. 3, 2015) (citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002); *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). "Additionally, both Circuits hold that a district court must accept as true any uncontroverted allegations in the plaintiff's complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Id.* (citing *Deprenyl*, 297 F.3d at 1347; *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

In its Complaint, Plaintiff asserts that this Court has personal jurisdiction over the Defaulted Defendants because they "purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the State of California and this district, through at least the Internet based Amazon or eBay e-commerce stores accessible in California and operating under their Seller IDs." Compl. ¶ 6(a). More specifically, "[t]he Seller ID Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of California through the advertisement, offer to sell, sale, and/or shipment of infringing goods into California." *Id.* In its Supplemental Brief, Plaintiff clarifies that personal jurisdiction is proper based on either specific jurisdiction premised on the Defaulted Defendants' contacts with California or, alternatively, the Defaulted Defendants' contacts with the United States pursuant to Federal Rule of Civil Procedure 4(k)(2). *See generally* Supp. Br.

/ / /

/ / /

/ / /

I.      <u>Federal Rule of Civil Procedure 4(k)(1) Specific Jurisdiction: Copyright, Unfair Competition, and Trademark Claims</u>

"[T]he defendant's suit-related conduct must create a substantial connection with the forum State" to establish specific jurisdiction over that defendant. *Walden v. Fiore*, 51 U.S. 277, 284 (2014). The relationship must arise out of contacts that the defendant himself creates with the forum State. *Id.* Further, the "minimum contacts" must be "with the forum State itself, not . . . with persons who reside there." *Id.*

The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *see also Williams*, 851 F.3d at 1023. The plaintiff bears the burden of establishing the first two prongs. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If the plaintiff does so, the burden shifts to the defendant to argue that exercise of jurisdiction would be unreasonable. *Id.*

A.      Purposeful Direction

For the first prong, "purposeful direction" and "purposeful availment" are distinct tests, with the former generally applied to tort claims and the latter to contract claims. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). Courts have applied the "purposeful direction" standard to cases involving alleged trademark infringement, *see, e.g., Romanowski v. RNI, LLC*, 2007 WL 323019 at *2 (N.D.

Cal. Jan. 31, 2007), and copyright infringement, *see, e.g.*, *Mavrix Photo*, 647 F.3d at 1228. Purposeful direction "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at that forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002).

Within this context, an intentional act refers to an "actual, physical act in the real world." *Juniper Networks, Inc. v. Juniper Media, LLC,* 2012 WL 160248, at *2 (N.D. Cal. Jan.17, 2012). A defendant need only have performed an act—any act—and need not have intended "to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 805. Here, Plaintiff alleges that each of the Defaulted Defendants sold and shipped goods via Amazon or eBay that infringe Plaintiff's copyrights, trademarks, and patents. *See* Compl. ¶¶ 6(a), 53, 74, 80. This is an intentional act that satisfies the first part of the purposeful direction test. *See, e.g.*, *Sennheiser Elec. Corp. v. Evstigneeva*, No. CV117884GAFFFMX, 2012 WL 13012384, at *3 (C.D. Cal. Sept. 27, 2012) ("Plaintiffs argue, and the Court agrees, that by selling and shipping products that infringe Plaintiffs' copyright, Defendant has committed 'an intentional act.' Thus, Plaintiffs have satisfied step one of the [specific personal jurisdiction] test.").

Previously, the Ninth Circuit held that "the express aiming requirement . . . is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) (citation omitted). Moreover, the Ninth Circuit had stated that "the expressly aimed prong of the purposeful direction test can be met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum." *Id.* (citation omitted).

However, following the Supreme Court's decision in *Walden*, *supra*, the Ninth Circuit revised this test, holding that, "while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the

18-CV-823 JLS (JLB)

exercise of specific jurisdiction, absent compliance with what *Walden* requires." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017).  In *Walden*, "the Court reinforced the traditional understanding that our personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015).  The Ninth Circuit noted that its prior individual targeting test "impermissibly allowed a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Axiom Foods*, 874 F.3d at 1070 (quoting *Walden*, 571 U.S. at 289).

Plaintiff relies on pre-*Axiom Foods* authority embracing the Ninth Circuit's individualized targeting test, out-of-circuit authority, and the following facts to support the "express aiming" requirement:  Plaintiff's principal place of business is located in Alpine, California, within this judicial district.  *See* Supplemental Declaration of Victor Talavera in Support of Personal Jurisdiction over the Defaulted Defendants ("Suppl. Talavera Decl.," ECF No. 112-1) ¶ 2.  Plaintiff's packaging clearly states that the product at issue was manufactured by Plaintiff in Alpine, California.  *See id.* ¶ 3(a); *see also* ECF No. 111-5 (Plaintiff's product packaging).  The same is true of Plaintiff's user manual.  *See* Suppl. Talavera Decl. ¶ 3(b); *see also* ECF No. 1-5 (Plaintiff's user manual).  Plaintiff's website, www.splitenderpro.com, indicates on its "Contact" page that Plaintiff "offer[s] full support on weekdays from 10am-4pm PST (California)."  Suppl. Talavera Decl. ¶ 3(c) (emphasis omitted).  Further, Plaintiff's packaging, manual, and website each list Plaintiff's patent, trademark, and copyright registrations for its product.  *Id.* ¶ 3(d); *see also* ECF No. 111-5 (Plaintiff's product packaging); ECF No. 1-5 (Plaintiff's user manual).  These registrations make clear that Plaintiff is located in Alpine, California.  *See* Suppl. Talavera Decl. ¶ 3(d); *see also* ECF No. 1-4 (certificate of registration for copyright of Plaintiff's product packaging, noting Plaintiff's Alpine, California, address); ECF No. 1-5 (certificate of registration for copyright of Plaintiff's user manual, noting Plaintiff's Alpine, California, address); ECF No. 1-6 (trademark registration noting Plaintiff's Alpine, California, address); ECF No. 1-7 (patents, indicating inventor's address is in Alpine, California).

Plaintiff also sent cease and desist notices to the Defaulted Defendants through eBay and Amazon, noting that Plaintiff is located in Alpine, California.  *See* Suppl. Talavera Decl. ¶¶ 3(e), (f) (citing ECF No. 9-16).  Defaulted Defendants' infringing products compete directly with Plaintiff's products.  *Id.* ¶ 11.

While the foregoing may have been adequate to establish individual targeting and therefore express aiming prior to *Walden*, these allegations—which focus on Plaintiff's, rather than the Defaulted Defendants', contacts with California—are inadequate, standing on their own, to establish the second minimum contacts requirement.  Although the facts that the Defaulted Defendants knew or should have known that Plaintiff was based in California, and that they nonetheless misused Plaintiff's intellectual property by selling infringing products throughout the United States, including in California, via eBay and/or Amazon in order to directly compete with Plaintiff, may remain relevant to this analysis, Plaintiff needs to allege something more.  *See Axiom Foods*, 874 F.3d at 1070.  And, while Mr. Talavera avers that he has, in fact, purchased infringing products from several of the Defaulted Defendants from Amazon or eBay and had the items shipped to California, *see* Suppl. Talavera Decl. ¶ 13, "a plaintiff cannot manufacture personal jurisdiction in a case by making such purchases in the forum state," *Theos Med. Sys., Inc. v. Nytone Med. Prod., Inc.*, No. 19-CV-01092-VKD, 2020 WL 500511, at *6 (N.D. Cal. Jan. 31, 2020).

Plaintiff provides evidence that the Defaulted Defendants collectively have sold at least 88,821 infringing products in the United States.  *See* Declaration of Damage Expert Richard Holstrom in Support of Default Judgment and/or Summary Judgment Against Defaulted Defendants ("Holstrom Decl.," ECF No. 111-27) ¶ 8.  Plaintiff notes that sales to California residents represent a significant portion of *Plaintiff's* sales and infers from that fact that a significant portion of the *Defaulted Defendants'* sales also likely occur in California.  *See* Suppl. Talavera Decl. ¶ 12.  However, beyond the purchases Mr. Talavera himself made, Plaintiff provides no evidence that sales of the Defaulted Defendants' infringing goods were, in fact, made in California, or that the Defaulted Defendants particularly targeted California.  *See, e.g.*, Mot. Ex. H (allegedly infringing LESCOLTON

marked product page on eBay, which makes no mention of California).  Although the Court recognizes that there are recent cases finding non-targeted sales online to residents of a state sufficient to establish "express aiming" for purposes of specific personal jurisdiction, the Court finds, post-*Walden* and -*Axiom Foods*, that cases deciding the issue the other way are better reasoned.  *See, e.g.*, *L.A. Gem & Jewelry Design, Inc. v. An & Assocs. Co. Inc.*, No. CV17-2417, 2017 WL 6209816, at *4–6 (C.D. Cal. Dec. 6, 2017) (finding no purposeful direction where the only evidence of actual sales by defendants in the forum were two purchases by plaintiff's law firm and eight sales defendants admitted making through Groupon, as "ten sales are simply too attenuated and isolated to suggest that California was the focal point of the sales and the harm suffered . . .").

Accordingly, because the Court does not find that the Defaulted Defendants purposefully directed their activities toward California, the Court finds that Plaintiff has failed to meet its burden to establish that specific personal jurisdiction under Rule 4(k)(1) is proper here.

## II.    Federal Rule of Civil Procedure 4(k)(2)

However, as noted *supra*, Plaintiff's Supplemental Brief argues in the alternative that personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2). Although Plaintiff does not cite Rule 4(k)(2) as a basis for personal jurisdiction in its Complaint, allegations in the Complaint that the Defaulted Defendants "purposefully direct their activities toward and conduct business with consumers ***throughout the United States***, including within the State of California," Compl. ¶ 6(a), "placed [the Defaulted Defendants] on notice that [Plaintiff] might premise personal jurisdiction on [the Defaulted Defendants'] contacts with the United States overall."  *Am. GNC Corp. v. GoPro, Inc.*, No. 18-CV-00968-BAS-BLM, 2018 WL 6074395, at *4 (S.D. Cal. Nov. 6, 2018).  And, even were that not the case, "Rule 4(k)(2) can be considered even when the plaintiff has affirmatively pled a different basis for personal jurisdiction."  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1296 (Fed. Cir. 2012).

/ / /

Federal Rule of Civil Procedure 4(k)(2) provides that, "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." "Thus, Rule 4(k)(2) is commonly referred to as the federal long-arm statute." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006) (citing *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002)).

Pursuant to Rule 4(k)(2), "a court may exercise jurisdiction when three requirements are met. First, the claim against the defendant must arise under federal law." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). The first requirement is met here, as Plaintiff asserts only federal copyright, trademark, unfair competition, and patent claims.

"Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction." *Id.* This Court has already determined that the Defaulted Defendants are not subject to personal jurisdiction in California under Rule 4(k)(1). *See supra* Section II.A.2.b.I.A. However, this Court need not "traipse through the 50 states, asking whether each could entertain the suit." *Holland Am. Line*, 485 F.3d at 461 (citations and internal quotations omitted). Rather, "absent any statement from [any one of the Defaulted Defendants] that it is subject to the courts of general jurisdiction in another state, the second requirement of Rule 4(k)(2) is met." *Id.* at 462. Here, no Defaulted Defendant contends that it is subject to personal jurisdiction in any other state; accordingly, the second requirement is also satisfied.

"Third, the federal court's exercise of personal jurisdiction must comport with due process." *Id.* at 461. "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the Defaulted Defendants] and the forum state, we consider contacts with the nation as a whole." *Id.* at 462. Thus:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

"Th[e] bar is relatively high when assessing a defendant's contacts with the nation as a whole under Rule 4(k)(2)." *Fumoto Giken Co. v. Mistuoka*, No. CV149797, 2015 WL 12766167, at *4 (C.D. Cal. Apr. 16, 2015) (citing *Holland Am. Line*, 485 F.3d at 462). "In 2007, the Ninth Circuit noted that, 'in the fourteen years since Rule 4(k)(2) was enacted, none of our cases have countenanced jurisdiction under this rule.' This remains true today." *Id.* (citing *Holland Am. Line*, 485 F.3d at 462).

As to the first prong, purposeful direction, the Court has already determined that the Defaulted Defendants, in selling products that allegedly infringe Plaintiff's intellectual property rights via eBay and/or Amazon, have committed intentional acts, *see supra* at Section II.A.2.b.I.A, but the Court must determine whether those acts were "expressly aimed at th[e United States] and "caus[ed] harm that the [Defaulted D]efendant[s] know[ wa]s likely to be suffered in the [United States]," *see Dole Food*, 303 F.3d at 1111.

Based on the evidence before the Court and accepting as true Plaintiff's uncontroverted allegations in the Complaint, the Court finds that Plaintiff has made a *prima facie* showing that the Defaulted Defendants' intentional acts were expressly aimed at the United States. Plaintiff provided the Court with screenshots showing that the prices of the Defaulted Defendants' allegedly infringing items were listed in U.S. dollars, that the products were listed for sale on amazon.com and ebay.com with product descriptions in English, and that shipping was available to the United States. *See generally* ECF Nos. 9-16–9-22 (exhibits containing various listings for the Defaulted Defendants' allegedly

infringing products).  Indeed, the eBay listings explicitly note that "[w]e do not ship internationally."  *See, e.g.*, ECF No. 9-17 at 240 (listing by Defendant s*shome).  Given that the Defaulted Defendants have not appeared in this action, making discovery into their sales impossible, the Court cannot assess the quantity of the Defaulted Defendants' sales that occur in the United States versus abroad, but it seems fair to infer from the amazon.com and ebay.com listings submitted by Plaintiff that the Defaulted Defendants were targeting United States customers through these listings, as alleged by Plaintiff in its Complaint.  *See* Compl. ¶¶ 10(b), 22.

Regarding the second prong, courts within the Ninth Circuit have traditionally applied a "but for" test to determine whether a claim "arises out of or relates to" a defendant's contacts with a forum.  *See, e.g.*, *Henderson v. United Student Aid Funds, Inc.*, No. 13-CV-1845 JLS (BLM), 2015 WL 12658485, at *4 (S.D. Cal. Apr. 8, 2015); *Notorious B.I.G. LLC v. Hutson*, No. 14-02415 SJO (JCx), 2014 WL 12589626, at *4 (C.D. Cal. July 3, 2014).  However, in *Ford Motor Co. v. Montana Eighth Judicial District Court*, the U.S. Supreme Court held that proof of causation is not required to determine whether specific jurisdiction exists.  141 S. Ct. 1017, 1026 (2021).  Some courts within the Ninth Circuit have interpreted this to mean that the traditional "but for" test is too narrow.  *See James Lee Constr., Inc. v. Gov't Emps. Ins. Co.*, No CV 20-68-M-DWM, 2021 WL 1139876, at *2 (D. Mont. Mar. 25, 2021) ("[A]s the Supreme Court just made clear, such a 'causation-only approach' improperly narrows the inquiry."); *Clarke v. Dutton Harris & Co., PLLC*, No. 2:20-cv-00160-JAD-BNW, 2021 WL 1225881, at *4 (D. Nev. Mar. 31, 2021) ("[T]he Supreme Court appears to have recently done away with [the 'but for'] approach.").

Thus, the relevant question is whether Plaintiff's claims "arise out of or relate to [the Defaulted Defendants'] contacts with the forum."  *Ford Motor Co.*, 141 S. Ct. at 1026 (emphasis removed) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017)).  "The first half of the standard asks about causation, but the back half, after the 'or,' contemplates that some relationships will support jurisdiction

without a causal showing." *Id.* Nevertheless, "the phrase 'relate to' incorporates real limits, as it must adequately protect defendants foreign to a forum." *Id.* This requirement is satisfied, as, but for the Defaulted Defendants' selling of products in the United States that infringe Plaintiff's intellectual property rights, Plaintiff would not have been injured.

In assessing the third factor, "whether exercising jurisdiction over a nonresident defendant comports with 'fair play and substantial justice," courts within the Ninth Circuit weigh seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993). The burden is on the defendant to "present a compelling case that the balance of the seven factors show that it would be unreasonable for this court to exercise personal jurisdiction." *See Schwarzenegger*, 374 F.3d at 802; *L.A. Gem*, 2017 WL 6209816, at *7–9. "In general, the presence of minimum contacts is enough" to reasonably exercise personal jurisdiction. *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 884 (N.D. Cal. 2011).

Given that the Defaulting Defendants have failed to appear in this action, they have not presented a compelling case that the exercise of personal jurisdiction would be unreasonable; further, the Court's brief, independent analysis of the factors suggests otherwise. Although the extent of the Defaulted Defendants' purposeful interjection into the United States' affairs is somewhat unclear in light of the Defaulted Defendants' default, it nonetheless is sufficient to establish minimum contacts. While the Court recognizes that the burden of litigating in a foreign jurisdiction can be substantial, it would appear this factor is of minimal relevance here, where the Defaulted Defendants have failed to appear and defend in this action. There does not appear to be a conflict with the sovereignty of

18-CV-823 JLS (JLB)

the Defaulted Defendants' state(s), as the alleged violations all concern United States intellectual property laws; on the other hand, the United States has a strong interest in enforcing these rights. *See, e.g.*, *Am. GNC Corp.*, 2018 WL 6074395, at *12 (citations omitted). As this case has been pending before this Court for three years, the most efficient judicial resolution of the controversy favors this Court's exercise of personal jurisdiction here. That Plaintiff is located in the United States and the alleged injury occurred here weighs strongly in favor of exercising jurisdiction. *See id.* Finally, it does not appear that there is any other forum in which Plaintiff would be able to adjudicate the present dispute. Accordingly, the Court finds that the exercise of personal jurisdiction over the Defaulted Defendants comports with due process and Rule 4(k)(2).

To the extent the Rule 4(k)(2) analysis for Plaintiff's patent claim may vary under Federal Circuit law, the Court finds it proper to exercise pendant personal jurisdiction over that claim, as all Plaintiff's claims share a common nucleus of operative fact. *See CollegeSource*, 653 F.3d at 1076 ("Under the doctrine of pendent personal jurisdiction, the court may also exercise jurisdiction over the balance of [Plaintiff]'s claims, which 'arise[ ] out of a common nucleus of operative facts.'") (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004)).

In light of the foregoing, the Court finds that it can exercise personal jurisdiction over the Defaulted Defendants with respect to Plaintiff's claims.

## B. Entry of Default Judgment

Having determined the Court has jurisdiction over this case, the Court now turns to the merits of Plaintiff's Motion for Default Judgment. *See generally* Mot.

As previously noted, in the Ninth Circuit, courts consider seven factors in determining whether to enter default judgment. *See Eitel*, 782 F.2d at 1471–72. The Court now addresses each of the relevant factors in turn.

### 1. Factor I: Possibility of Prejudice to Plaintiff

The first factor weighs in favor of entering default judgment. Over a period of three years, the Defaulted Defendants have failed to participate in this action. Absent default

judgment, Plaintiff likely will be without recourse.  *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (granting default judgment because defendant's "unwillingness to cooperate and defend" left plaintiff without other opportunities for recourse).   Further, Plaintiff notes that certain monies belonging to the Defaulted Defendants have been frozen by Amazon, and it currently is unable to obtain those monies. Mot. at 10.  The resultant prejudice to Plaintiff favors default judgment.  *See Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*, 847 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2012) ("[A plaintiff] will generally be prejudiced if a court declines to grant default judgment where, as here, it lacks other recourse to recover damages for its injury or means to prevent [the defendants] from causing it further harm.").

> 2.    *Factors II and III: Merits of the Substantive Claims & Sufficiency of the Complaint*

Next, the Court analyzes the second and third *Eitel* factors.  To warrant entering a default judgment, a complaint's allegations must be sufficient to state a claim upon which relief can be granted.  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).   A complaint satisfies this standard when the claims cross the line from the conceivable to the plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).  A court can use its common sense to determine whether a claim is plausible. *See id.* at 679.  A default concedes the truth of the allegations in the complaint, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *see also Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 661 (S.D. Cal. 1997) (noting that, "[i]n assessing liability, the complaint's allegations are taken as true" because "a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact").

> a.    Plaintiff's Copyright and Patent Infringement Claims

Previously, the Court concluded that, as a matter of law, the at-issue product packaging and manuals infringed Plaintiff's copyrights and the at-issue products infringed Plaintiff's patents. *See* MSJ Order at 4–6, 12–13.

/ / /

As to Plaintiff's copyright infringement claim, the Copyright Act grants the copyright owner six exclusive rights, including the rights to reproduce the copyrighted work, to sell copies of the copyrighted work, and to publicly display the copyrighted work. *See* 17 U.S.C. § 106. "'Anyone who violates any of the exclusive rights of the copyright owner,' that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work in one of the [six] ways set forth in the statute, 'is an infringer of the copyright.'" *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) (quoting 17 U.S.C. § 501(a)). Plaintiff alleges that the Defaulted Defendants "sold products that copy Plaintiff's copyrighted expression on Plaintiff's manual," Compl. ¶ 47; "displayed on Amazon or eBay portions of [their] manual that infringed Plaintiff's copyrighted manual," *id.* ¶ 49; and "displayed on Amazon or eBay portions of [their] packaging that infringed Plaintiff's copyrighted packaging," *id.* ¶ 46; thus, Plaintiff alleges that the Defaulted Defendants have violated at least one of the exclusive rights enumerated in section 106 of the Copyright Act. Accordingly, given that the Court has already found that the manuals and packaging in question infringe Plaintiff's copyrights, *see* MSJ Order at 4–6, Plaintiffs state a plausible claim for copyright infringement.

As to Plaintiff's patent infringement claim, the Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent." 35 U.S.C. § 271(a). Plaintiff clearly alleges that the Defaulted Defendants infringe its U.S. Patents by "selling, importing and/or offering to sell infringing products, namely the hair trimmers sold under the names FASIZ, LESCOLTON, UMATE and HAIR TRIMMER in interstate commerce." Compl. ¶ 80. Given that the Court already has found the enumerated products to infringe Plaintiff's U.S. Patents, *see* MSJ Order at 12–13, Plaintiff also states a plausible claim against the Defaulted Defendants for patent infringement.

/ / /

Thus, Plaintiff satisfactorily has pleaded copyright and patent infringement claims against the Defaulted Defendants.

### b.   Plaintiff's Trade Dress Infringement Claim

Although the Court previously held that the at-issue packaging did not infringe Plaintiff's trade dress *as a matter of law*, *see* MSJ Order at 12, the Court must now determine whether Plaintiff satisfactorily has pleaded that the at-issue packaging *plausibly* infringes Plaintiff's trade dress.

"[T]he Lanham Act, in § 43(a), gives a producer a cause of action for the use by any person of any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods." *Wal–Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000) (citation omitted).  For a trade dress infringement claim, the plaintiff must prove that: "(1) the trade dress is inherently distinctive or has acquired distinctiveness through secondary meaning; (2) there is a likelihood that the public will be confused by the infringing use; and (3) the trade dress is nonfunctional." *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 828 (9th Cir. 1997).

Here, the Court finds that Plaintiff's allegations of trade dress infringement are sufficient to meet the less-demanding *Iqbal* plausibility standard.  Plaintiff clearly alleges that the Defaulting Defendants used its trade dress.  *See* Compl. ¶¶ 64, 68.  Further, Plaintiff plausibly has shown: (1) its packaging has acquired secondary meaning; (2) a likelihood of consumer confusion with the Defaulted Defendants' packaging; and (3) the nonfunctional nature of Plaintiff's packaging, for the reasons provided below.

### I.   Acquired Distinctiveness Through Secondary Meaning

First, Plaintiff claims that its packaging has both inherent distinctiveness and has acquired secondary meaning in the eyes of consumers.  *See* Declaration of Victor Talavera ("Talavera Decl.," ECF No. 111-3) ¶¶ 7, 12; Compl. ¶ 56(c).  Trade dress is "the total image of a product, including features such as size, shape, color, texture, and graphics." *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1126 (9th Cir. 2016) (internal

quotation omitted).   One way a mark can acquire distinctiveness is if the mark has developed secondary meaning.  *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000).  In the Ninth Circuit, deliberate copying may suffice to support an inference of secondary meaning.  *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844 (9th Cir. 1987).  The *Fuddruckers* rule "derives from the assumption that a defendant would not copy a mark or design unless it (1) believed the mark or design had attained secondary meaning in the minds of consumers, and (2) intended to exploit this secondary meaning to deceive consumers."  *Cont'l Lab. Prod., Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1008 (S.D. Cal. 2000).  Precise copying of a phrase on a plaintiff's packaging implies that the trade dress has acquired secondary meaning.  *See Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960).

The Court finds that the totality of Plaintiff's product packaging plausibly qualifies for trade dress protection.  *See Millennium Labs.*, 817 F.3d at 1126; *see also* Mot. at 9–11. Although Plaintiff provides no evidence of inherent distinctiveness, the Defaulted Defendants have deliberately copied enough of the total image of Plaintiff's packaging to meet the *Iqbal* plausibility standard for acquired secondary meaning.  *See Wal-Mart Stores*, 529 U.S. at 211; *Fuddruckers*, 826 F.2d at 844.  Both Plaintiff's and the at-issue packaging have similar elements, including a woman with straight hair on the right side; the name of the product in the top left corner; and a black background.  Mot. Exs. A & B (ECF Nos. 111-4 & 111-5).   On the left side of both Plaintiff's and the Defaulted Defendants' packaging is a picture of the hair trimmer flanked by the text "CORDLESS SPLIT END HAIR TRIMMER," "SNIPS THE ENDS, NOT THE LENGTH," and "SAFELY TRIM SPLIT ENDS AND DAMAGED HAIR ENDS IN MINUTES."[2]  *Id.*  Such precise copying of phrases on the Defaulted Defendants' packaging implies that Plaintiff's packaging has acquired secondary meaning.  *See Audio Fidelity*, 283 F.2d at 558.  Given the similarities between the at-issue packaging and Plaintiff's, it is not only plausible, but likely, that the

---

[2] "SAFELY" is misspelled as "SAFEY" on the Defaulted Defendants' packaging.  *See* Mot. Ex. A.

Defaulted Defendants (1) believed that Plaintiff's packaging had acquired secondary meaning, and (2) exploited that secondary meaning to deceive consumers. *See Cont'l Lab. Prod.*, 114 F. Supp. 2d at 1008.

## II.    Likelihood of Confusion

Second, a comparison of Plaintiff's and the Defaulted Defendants' packaging shows enough similarities that there is a plausible likelihood of confusion to consumers. A trade dress-infringement claim meets the *Iqbal* plausibility standard when the complaint describes, in both narrative and pictorial forms, the plaintiff's trade dress and the defendant's claimed trade dress. *See Emeco Indus., Inc. v. Restoration Hardware, Inc.*, No. C-12-5072, 2012 WL 6087329, at *1 (N.D. Cal. Dec. 6, 2012).

Given the evidence provided in Plaintiff's Complaint, Plaintiff has shown that there is a plausible likelihood of confusion between its packaging and that of the Defaulted Defendants. Plaintiff details the similarities between both its and the Defaulted Defendants' trade dress, *see* Compl ¶ 65; *id.* Ex. 2; Mot. at 9−10; *id.* Exs. A–D, and notes that consumers actually have been confused by the similar trade dress, Compl. ¶ 65(e). Indeed, a customer who was confused between Plaintiff and the Defaulted Defendants' products and packaging emailed Plaintiff a photo of one of the Defaulted Defendants' products that was missing a battery. Talavera Decl. ¶ 12. The photograph included the Defaulted Defendants' "HAIR TRIMMER" marked packaging in the background. *Id.* Accordingly, Plaintiff has satisfactorily demonstrated likelihood of confusion.

## III.    Nonfunctional Trade Dress

Third, although Plaintiff did not provide any factual statements concerning whether its packaging is nonfunctional, the Court nevertheless finds that the packaging is nonfunctional. Plaintiff merely states in a conclusory manner that the packaging is nonfunctional and thus qualifies for trade dress protection. *See* Compl. ¶ 56(c). However, using its common sense, *Iqbal*, 556 U.S. at 679, the Court finds that the trade dress claimed by Plaintiff is nonfunctional. The packaging's protected elements consist only of decorative marks, images, and colors, each of which have no apparent functional purpose.

*See, e.g.*, Compl. Ex. 2.   Thus, Plaintiff plausibly has pleaded that its trade dress is protectible and therefore adequately has pleaded a claim for trade dress infringement.

Because Plaintiff states claims against the Defaulted Defendants for copyright, patent, and trade dress infringement, the second and third *Eitel* factors favor default judgment.

### 3.   Factor IV: Sum of Money at Stake

Under the fourth *Eitel* factor, the Court considers whether the damages sought are proportional to the alleged harm.   *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010).   Forensic reviews can be used to quantify the losses sought by the plaintiff.   *Nat'l Union Fire Ins. Co. v. Shores*, No. 119CV01113, 2020 WL 2937801, at *7 (E.D. Cal. June 3, 2020).   The Court can consider the plaintiff's "declarations, calculations, and other documentation of damages" to determine the reasonableness of the amount at stake.   *HICA Educ. Loan Corp. v. Warne*, No. 11-CV-04287, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012).   The "[p]laintiff's burden in 'proving up' damages is relatively lenient."   *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).   If the requested amounts have evidentiary support and are otherwise proportionate to the defendant's offenses, default should not be refused merely because the amount sought is substantial.   *BR N. 223, LLC v. Glieberman*, No. 1:10-CV-02153, 2012 WL 639500, at *5 (E.D. Cal. Feb. 27, 2012).   However, damages requests far exceeding amounts awarded on default in prior cases asserting similar claims often are found to weigh against default judgment.   *See, e.g.*, *JFeld LLC, v. Blanket Lovers*, No. CV208804, 2021 WL 2302447, at *4 (C.D. Cal. Apr. 29, 2021) (finding that it was unreasonable to request trademark infringement damages of $3,000,000 in light of similar cases awarding damages of $1,023,151.27 and $1,603,200).

For copyright infringement, trade dress infringement, and patent infringement, Plaintiff seeks to recover $19,539,731.79, calculated from Plaintiff's lost profits.   *See* Mot. at 12; *see also* 17 U.S.C. § 504(b); 15 U.S.C. § 1117(a); 35 U.S.C. § 284.   In addition, for copyright infringement and trade dress infringement, Plaintiff seeks to recover a total of

$6,627,814.94, calculated from the Defaulted Defendants' sales of infringing products. *See* Mot. at 12; *see also* 17 U.S.C. § 504(b); 15 U.S.C. § 1117(a). In total, Plaintiff seeks $26,167,546.73 for its copyright, trade dress, and patent infringement claims. Mot. at 12.

Although the damages sought by Plaintiff are substantial, on balance, the Court finds that they are proportional to Plaintiff's alleged harms. *See BR N. 223*, 2012 WL 639500, at *5. Plaintiff provides the number and price of each of the Defaulted Defendants' sold products. *See* Calculation of Lost Profits ("Calc.," ECF No. 111-29). While the total damages award sought is well above what prior courts have awarded in intellectual property infringement cases, for each of the individual Defaulted Defendants, the sought damages are well below $1,603,200. *See JFeld*, 2021 WL 2302447, at *5. For example, Defendant Xuchang Beisirui Trading Co., Ltd., sold only four infringing products, resulting in total requested damages of only $1,191.92. *See* Calc. Therefore, the fourth *Eitel* factor weighs in favor of default.

### 4. *Factor V: Possibility of Factual Dispute*

This factor turns on the degree of possibility that a dispute concerning material facts exists or may later arise. *Eitel*, 782 F.2d at 1471–72. Here, Plaintiff's allegations must be taken as true because of the default, *see TeleVideo Sys.*, 826 F.2d at 917–18, and therefore any purported factual dispute appears settled, as there is no indication that the Defaulted Defendants will defend against the action. Accordingly, this factor favors default.

### 5. *Factor VI: Reason for Default*

If a defendant's default may have been the product of excusable neglect, this factor weighs against granting default judgment. *Eitel*, 782 F.2d at 1471–72. Here, there is no evidence of excusable neglect. Thus, this factor weighs in favor of default.

### 6. *Factor VII: Policy Favoring Merits Decisions*

Although this factor, by its nature, generally weighs against default judgment because it encourages merits decisions, "this preference, standing alone, is not dispositive." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d, 1172, 1177 (C.D. Cal. 2002). In the present case, there is no indication that a merits decision is practicable, as, over a period of

three years, the Defaulted Defendants have failed to participate in this action. The Court therefore concludes that the timely administration of justice outweighs the strong preference for merits decisions in this case. This factor therefore weighs in favor of default judgment.

In sum, the Court finds that all seven *Eitel* factors weigh in favor of default judgment against the Defaulted Defendants. Accordingly, the Court **GRANTS** Plaintiff's Motion as to all the Defaulted Defendants.

## C.   *Relief Requested*

Having found that the *Eitel* factors favor default judgment, the Court must assess the appropriateness of the relief Plaintiff requests. Federal Rule of Civil Procedure 54(c) "allows only the amount prayed for in the complaint to be awarded to the plaintiff in default." *Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962).

Here, Plaintiff prayed for, *inter alia*, its lost profits, the Defaulted Defendants' sales, and a permanent injunction enjoining further infringement, which is the same relief that Plaintiff seeks through its Motion. *See* Compl. at 26–30; Mot. at 12–14. Plaintiff also seeks entry of final judgment against the Defaulted Defendants despite the claims still pending against Taizhou. *See* Mot. at 12–14. However, given the deficiencies in Plaintiff's evidence detailed below, the Court finds none of the requested relief appropriate at this time.

### 1.   *Monetary Relief*

As previously noted, Plaintiff seeks monetary damages, calculated both from Plaintiff's lost profits and from the Defaulted Defendants' sales. Mot. at 12.

For copyright infringement, a plaintiff can recover damages from a defendant's sales and the plaintiff's actual damages, but damages from the defendant's sales must not include any amount "taken into account in computing the actual damages." 17 U.S.C. § 504(b). Similarly, for trademark infringement, a plaintiff can recover actual damages and damages calculated from the infringer's sales. 15 U.S.C. § 1117(a). However, damages calculated from both the plaintiff's lost profits and the infringer's sales are generally considered an

impermissible double recovery. *See Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) (citation omitted). For both copyright and trademark infringement, to determine damages from an infringer's sales, a plaintiff must present proof only of the infringer's gross revenue. *See* 17 U.S.C. § 504(b); 15 U.S.C. § 1117(a). For a patent infringement action, a plaintiff can recover either lost profits or a reasonable royalty. *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1020 (S.D. Cal. 2011) ("Two alternative methods exist for calculating damages in a patent case; they 'are the patentee's lost profits and the reasonable royalty he would have received through arms-length bargaining.'") (citation omitted); *see also* 35 U.S.C. § 284.

Under Federal Rule of Civil Procedure 8(a)(3), a "plaintiff's demand for relief must be specific, and it must prove up the amount of damages." *Landstar Ranger,* 725 F. Supp. 2d at 923 (internal citations omitted). If the facts necessary to determine damages are not contained in the complaint, the facts will not be established by default. *See Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir. 1992). A party's failure to provide a court with a reliable framework for apportioning damages can be fatal to the party's claims. *Hanover Ins. Co. v. Anova Food, LLC*, No. 14-00281, 2016 WL 3620730, at *15 (D. Haw. June 29, 2016).

There are several issues with Plaintiff's present request for monetary relief. First, Plaintiff appears to seek an award of *both* $19,539,731.79 calculated from Plaintiff's lost profits *and* $6,627,814.94 calculated from the Defaulted Defendants' sales. *See* Mot. at 12. However, Plaintiff's damages expert indicates that Plaintiff can be awarded each amount *in the alternative*. Holstrom Decl. ¶¶ 18–19. If Plaintiff is requesting damages calculated from both its lost profits and the Defaulted Defendants' sales, Plaintiff must indicate how it calculated its damages to prevent an impermissible double recovery. *See* 17 U.S.C. § 504(b); 15 U.S.C. § 1117(a); *Nintendo*, 40 F.3d at 1011.

Second, Plaintiff has not provided sufficient evidence to support its request for its lost profits. Plaintiff seeks to recover $19,539,731.79 in actual damages, calculated from Plaintiff's lost profits, for copyright, trade dress, and patent infringement. *See* Mot. at 12.

However, the Court finds that Plaintiff has not sufficiently proved up its damages. *See Landstar Ranger*, 725 F. Supp. 2d at 923. Plaintiff conclusorily claims that its incremental costs are "less than $30 a unit," but provides no evidence to support its assertion that it makes a rather incredible profit of approximately $220 per unit. Holstrom Decl. ¶ 16. In addition, Plaintiff alleges that its lost profits can be figured solely from the number of sales each Defaulted Defendant made, because, given that Plaintiff's products are protected by the U.S. Patents, Plaintiff "should have 100% market share." Talavera Decl. ¶ 27. But the Court has concerns that a consumer who pays $30 for a hair trimmer might never pay $250 for a product of similar function. Unless Plaintiff can provide specific evidence to support these foundational, but presently only conclusorily alleged, facts, those facts cannot be established on default. *See Cripps*, 980 F.2d at 1267.

Finally, Plaintiff has not apportioned the damages calculated from the Defaulted Defendants' sales among the different types of infringement alleged. Specifically, Plaintiff seeks to recover a total of $6,627,814.94 in damages for copyright infringement and trade dress infringement. Mot. at 12. However, it is impossible, on the record presently before the Court, to determine what percentage or portion of the Defaulted Defendants' sales are due to copyright, trade dress, and/or patent infringement. Because Plaintiff cannot recover the Defaulted Defendants' sales as a remedy for the Defaulted Defendants' patent infringement, Plaintiff needs to provide evidence as to what percentage of the Defaulted Defendants' sales are due to each type of intellectual property infringement.[3] Plaintiff's failure to provide a reliable framework for apportioning damages is fatal to its claims. *See Hanover Ins.*, 2016 WL 3620730, at *15 (finding that a party's failure to distinguish between covered and non-covered claims in apportioning damages was "fatal to their claims").

---

[3] For example, if Plaintiff were to provide evidence that a customer's decision to purchase the Defaulted Defendants' products was 60% based on the product's functionality rather than its packaging, Plaintiff could only recover the remaining 40% of the Defaulted Defendants' sales under a copyright or trademark infringement claim.

Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's request for monetary damages, without prejudice to renewal of the request.

### 2.  *Permanent Injunctive Relief*

In addition to monetary relief, Plaintiff asks this Court to issue a permanent injunction enjoining the Defaulted Defendants' infringing activities.  Mot. at 13–14.  A plaintiff seeking a permanent injunction must demonstrate that: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"[;] and (4) it is in the public's interest to issue the injunction.  *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006).  A plaintiff must independently "prove up" its entitlement to permanent injunctive relief.  *Oakley, Inc. v. Moda Collection, LLC*, No. SACV16160, 2016 WL 7495835, at *7 (C.D. Cal. June 9, 2016).  Although traditional principles of equity demand a fair weighing of the *eBay* factors, the decision to grant or deny permanent injunctive relief ultimately is an act of equitable discretion by the district court.  547 U.S. at 391, 394.  A court can deny a motion for injunctive relief without prejudice if a plaintiff fails to meet its evidentiary burden under *eBay*.  *See, e.g.*, *Tzu Techs., LLC v. Winzz, LLC*, No. LACV1505493, 2016 WL 6822754, at *7 (C.D. Cal. June 14, 2016).

While the Court finds it is plausible, based on the facts alleged in the Complaint, that Plaintiff may be entitled to permanent injunctive relief against the Defaulted Defendants, the Court also finds that Plaintiff has failed to prove up adequately its entitlement to said relief.  *See Oakley*, 2016 WL 7495835, at *7.  Plaintiff's Motion utterly fails to analyze the *eBay* factors to demonstrate Plaintiff's need for injunctive relief as to copyright, trade dress, and/or patent infringement.  *See generally* Compl.; Mot.  In light of Plaintiff's wholly inadequate showing, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's request for permanent injunctive relief, without prejudice to renewal of the request.  *See Tzu Techs.*, 2016 WL 6822754, at *7.

/ / /

/ / /

### 3.   *Final Judgment Under Rule 54(b)*

Finally, Plaintiff moves for entry of final judgment against the Defaulted Defendants under Federal Rule of Civil Procedure 54.  *See* Mot. at 3–5.  Rule 54(b) provides that a court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  Here, given Plaintiff's insufficient evidence to warrant the requested relief against the Defaulted Defendants, the Court declines at this time to enter a final judgment under Rule 54(b).

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Default Judgment (ECF No. 111) and **GRANTS** Plaintiff's supporting Request for Judicial Notice (ECF No. 113).  Specifically, the Court **GRANTS** default judgment in favor of Plaintiff against the Defaulted Defendants but **DENIES WITHOUT PREJUDICE** Plaintiff's requested relief.

Plaintiff **MAY FILE** a motion for monetary and injunctive relief against the Defaulted Defendants supported by adequate evidence and consistent with this Order within thirty (30) days of the date on which this Order is electronically docketed.

**IT IS SO ORDERED.**

Dated:  August 6, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

18-CV-823 JLS (JLB)