Darren J. Quinn (149679)
LAW OFFICES OF DARREN J. QUINN
12702 Via Cortina, Suite 105
Del Mar, CA 92014
Tel: (858) 509-9401

Jonah A. Grossbardt (283584)
SRIPLA, P.A.
1801 Century Park E, Suite 1100
Los Angeles, CA 90067-2313
Tel: (323) 364-6565

*Attorneys for Plaintiff Talavera Hair Products, Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TALAVERA HAIR PRODUCTS, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>TAIZHOU YUNSUNG ELECTRICAL APPLIANCE CO., LTD., a business entity, and THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON EXHIBIT “1”,<br><br>Defendants. | CASE NO. **18-cv-00823-JLS-JLB**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR MONETARY AND INJUNCTIVE RELIEF AGAINST DEFAULTED DEFENDANTS**<br><br>Judge: Janis L. Sammartino<br>Date: October 14, 2021<br>Time: 1:30 p.m.<br>Courtroom: 4D<br>Edward J. Schwartz U.S. Courthouse<br>221 West Broadway<br>San Diego, CA 92101 |

# TABLE OF CONTENTS


I. INTRODUCTION . . . . . 1

II. MONETARY RELIEF AGAINST THE DEFAULTED DEFENDANTS . . 3

A. Plaintiff Seeks Plaintiff's Lost Profit Damages On All Claims To Eliminate Potential Double Recovery And Allocation Issues . . . . . 3

1. No Double Recovery Sought . . . . . 3

2. Plaintiff's Lost Profits Are Supported . . . . . 4

3. Allocation Between Claims Is Effectively A Non-Issue . . . . . 5

B. Alternatively, Plaintiff Seeks Defendants' Lost Profits On Its Copyright and Trademark Claims . . . . . 6

III. INJUNCTIVE RELIEF AGAINST THE DEFAULTED DEFENDANTS . . . . . 6

A. Factor 1: Irreparable Harm . . . . . 7

1. Loss of Plaintiff's Right To Exclude Under Its Patents and Copyrights . . . . . 7

2. Past Infringement Plus Threat of Future Infringement . . . . . 9

3. Multiplicity of Lawsuits . . . . . 9

4. Price Erosion, Loss of Goodwill, Damage To Reputation, Loss of Business Opportunities . . . . . 9

B. Factor 2: Inadequate Remedy At Law . . . . . 10

C. Factor 3: Balance of Hardships . . . . . 10

D. Factor 4: Public Interest . . . . . 10

IV. THIS COURT CAN EXPRESSLY DETERMINE UNDER RULE 54(b) THAT "THERE IS NO JUST REASON TO DELAY" ENTRY OF FINAL JUDGMENT AGAINST THE DEFAULTED DEFENDANTS . . . . . 11

V. CONCLUSION . . . . . 13

# TABLE OF AUTHORITIES

Cases:

*Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633 (Fed. Cir. 2015) . . . 8, 11

*Brighton Collectibles, LLC v. IPPO Jewelry Corp.*, 2017 U.S. Dist. LEXIS 24868 (C.D. Cal. Feb. 22, 2017) . . . 9

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922 (Fed. Cir. 2012) . . . 9

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) . . . 2, 7, 8

*Frow v. De La Vega*, 82 U.S. 552 (1872) . . . 12

*Go Daddy Operating Co., LLC v. Ghaznavi*, 2018 U.S. Dist. LEXIS 33002 (N.D. Cal. Feb. 28, 2018) . . . 11

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239 (9th Cir. 2013) . . . 9

*MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007) . . . 8

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142 (Fed Cir. 2011) . . . 8

*Societe D'Equipments Internationaux Nig., Ltd. v. Dolarian Capital, Inc.*, 2016 U.S. Dist. LEXIS 60049 (E.D. Cal. May 4, 2016) . . . 12

*Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958 (8th Cir. 2005) . . . 8

*Texaco, Inc. v. Ponsoldt*, 939 F.2d 794 (9th Cir. 1991) . . . 11

Statutes and Rules:

15 U.S.C. § 1116(a) . . . 7

15 U.S.C. §1116(a) . . . 7

17 U.S.C. §502(a) . . . 7

35 U.S.C. §283 . . . 7

Fed. R. Civ. Proc 54(b) . . . 2

## I. INTRODUCTION

Pursuant to this Court's order, plaintiff timely moves for monetary and injunctive relief against the forty (40) Defaulted Defendants[1] on plaintiff's claims for patent, copyright and trade dress infringement. [Dkt. 120 {Order}, at 32]. This Court ruled that "Plaintiff states claims against the Defaulted Defendants for copyright, patent, and trade dress infringement." [Dkt. 120 {Order}, at 26]. This Court granted plaintiff's motion for default judgment against the Defaulted Defendants, but denied without prejudice plaintiff's request for monetary and permanent injunctive relief. [Dkt. 120 {Order}, at 28].

As discussed in §II, plaintiff seeks monetary relief prayed for in the Complaint on plaintiff's claims for patent, copyright and trade dress infringement. In response to the Court's comments, plaintiff presents additional evidence to further support plaintiff's lost profit damages that are recoverable on each of plaintiff's claims. Plaintiff's damage expert presents a very conservative supplemental analysis that addresses the Court's concern "that a consumer who pays [$75][2] for a hair trimmer might never pay $250 for a product of similar function." Plaintiff's requested monetary relief is not seeking an impermissible

---

[1] The forty (40) "Defaulted Defendants" are listed in the Court's Order [Dkt. 120 {Order}, at 1, n. 1]as follows: "allforyoushopper.usa (3), ANIMON (4), anothercloud (5), Aosend (6), AoStyle (7), AuPolus (8), Beisirui Hair Store (11), Cai ming zhil (12), Ciao Fashion (14), Enjoy&Life (19), Fosen Man (20), Georgy's Store (22), Hairsmile (24), Judi Shop (26), Kosmasl (27), Lanmpu Creative (31), MKLOPED (32), Mokshee Mokshee/Donop (34), MyBeautyCC (35), NewPollar (37), Olungts US (39), Puck Du/SmartGo (40), PUTOS (41), SunNatural/SunNature (44), Turritopsis nutricula (45), Ukliss Beauty (46), Wsduos (47), Yara-Yarn (48), Noledo (51), nantongaotaiguoji Trading Co Ltd (52), Beskol (53), Chunhet (54), Funny Fala (55), Huixin Economic (56), NeSexy (57), Samantha Bowen (58), Vanylihair (60), YokEnjoy (61), BEAUTYDESIGN (75), and S*SHOME (78)."

[2] The court's order refers to "$30" based upon plaintiff's incremental costs of "less than $30," but the context indicates the Defaulted Defendants' average selling price of $74.73 ($6,606,245.94/88,406 units).

double recovery against the Defaulted Defendants regardless of any allocation of damages between the claims. In the event that plaintiff's damage claims are insufficient, then plaintiff alternatively requests an award of the Defaulted Defendants' profits for plaintiff's copyright and trademark claims.

As discussed in §III, plaintiff seeks permanent injunctive relief prayed for in the Complaint on plaintiff's claims for patent, copyright and trade dress infringement. The Complaint's allegations and evidence submitted support each of the factors under *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006).

As discussed in §IV, the court should enter final judgment against the Defaulted Defendants pursuant to Rule 54(b)[3] because "there is no just reason for delay" of entry of judgment against the Defaulted Defendants. *Id*. Final judgment against the Defaulted Defendants for monetary and permanent injunctive relief will allow plaintiff to recover Amazon funds of the Defaulted Defendants frozen by this Court[4] and help protect plaintiff from future infringement.

As to sole remaining undefaulted defendant TAIZHOU YUNSUNG ELECTRICAL APPLIANCE CO., LTD. ("TAIZHOU"), the trial will go forward primarily on the issue of whether defendant TAIZHOU "manufactures items that infringe Plaintiff's copyrights, trademark rights and patent rights and then the infringing items are sold or distributed in the United States on Amazon and eBay through the established distribution channels of the Seller ID Defendants [Defaulted Defendants]." [Dkt. 1 {Complaint), ¶4]. The Court has already entered partial summary judgment against defendant TAIZHOU that the products at issue infringed plaintiff's patents and packaging and instruction manuals infringed plaintiff's copyrights. [Dkt. 118 {SJ Order]] Thus, defendant TAIZHOU is primarily defending the action on the ground that it did not manufacture the

---

[3] All references to "Rule" refer to Fed. R. Civ. Proc.

[4] The Court entered temporary injunctive relief that remains in effect. [Dkts. 10, 26 and 28].

products, packaging and manuals.

## II. MONETARY RELIEF AGAINST THE DEFAULTED DEFENDANTS

The Complaint puts the Defaulted Defendants on notice that Talavera has at least $46,250,000 in "lost profits." [Dkt 1 {Complaint}, ¶¶31-33].

In response to concerns raised by the Court [Dkt. 120 {Order}, pp. 28-30] regarding monetary relief against the Defaulted Defendants, plaintiff submits amended declarations from plaintiff's damage expert (Holstrom Decl.)[5] and from plaintiff (Talalavera Decl.)[6]. The amended declarations reflect information relating to the forty (40) Defaulted Defendants.

### A. Plaintiff Seeks Plaintiff's Lost Profit Damages On All Claims To Eliminate Potential Double Recovery And Allocation Issues

#### 1. No Double Recovery Sought

The Court expressed a concern that "Plaintiff appears to seek an award of *both* $19,539,731.79 calculated from Plaintiff's lost profits *and* $6,627,814.94 calculated from the Defaulted Defendants' sales." [Dkt. 120 {Order}, pp. 29 (emphasis in original)].

In response, plaintiff's damage expert clarifies that plaintiff seeks plaintiff's lost profits based the Defaulted Defendants' actual sales of 88,406 infringing units. [Holstrom Decl., ¶¶14-17]. Plaintiff's request for defendant's profits is made in the alternative (in the event plaintiff's lost profit damages are unavailable or lower). [Holstrom Decl., ¶¶15, 17 and 34]. Plaintiff is not seeking both plaintiff's lost profits and the Defaulted Defendants' profits to eliminate any

---

[5] All references to "Holstrom Decl." refer to the concurrently filed Amended Declaration of Damage Expert Richard Holstrom in Support of Monetary Relief Against Defaulted Defendants.

[6] All references to "Talavera Decl." refer to the concurrently filed Declaration of Victor Talavera in Support of Monetary Relief Against Defaulted Defendants.

potential double recovery.

### 2. Plaintiff's Lost Profits Are Supported

The Court also expressed a concern that "Plaintiff has not provided sufficient evidence to support its request for its lost profits." [Dkt. 120 {Order}, pp. 29].

The Court noted that "Plaintiff conclusorily claims that its incremental costs are "less than $30 a unit," but provides no evidence to support its assertion that it makes a rather incredible profit of approximately $220 per unit." [Dkt. 120 {Order}, pp. 30 (emphasis in original)].

In response, plaintiff submits COURT EYES ONLY documents to support that plaintiff's cost is $15/unit. [Confidential Talavera Decl.[7], ¶2 and Ex. 1]. Plaintiff also submitted documents showing its initial sales prices of $249.99 that eroded to $195.99. [Talavera Decl., ¶5-6. Exs. A and B].

The Court noted "concerns that a consumer who pays [$75][8] for a hair trimmer might never pay $250 for a product of similar function." [Dkt. 120 {Order}, pp. 29]. Stated another way, the court appears concerned the Defaulted Defendants may not have sold 88,406 units if their selling price had been $250 per unit. [Holstrom Decl., ¶23].

In response, plaintiff's expert "very conservatively calculated plaintiff's lost profits based upon the Defaulted Defendants' actual selling prices (average selling price of $74.73) instead of plaintiff's selling price ($249.99). Since the Defaulted Defendants collectively sold 88,406 units at an average selling price of $74.73 on Amazon and eBay, it is reasonable to assume that plaintiff could have

---

[7] All references to "Confidential Talavera Decl. refer to the concurrently submitted Confidential Declaration of Victor Talavera in Support of Monetary Relief Against Defaulted Defendants.

[8] The court's order refers to "$30" based upon plaintiff's incremental costs of "less than $30," but the context indicates the Defaulted Defendants' average selling price of $74.73 ($6,606,245.94/88,406 units).

easily also sold 88,406 units at an average selling price of $74.73 on Amazon and eBay." [Holstrom Decl., ¶24]. "This very conservative amount results in a average lost profit of $59.73 per unit ($74.73 - $15 cost) based upon the Defaulted Defendants' average selling price ($74.73)." [Holstrom Decl., ¶24].

The end result is plaintiff now seeks plaintiff's lost profit damages in the total amount of **$5,280,155.94** based upon ***each*** Defaulted Defendants' actual selling prices (as opposed to the $19,539,731.79 requested based off of plaintiff's $249.99 selling price).

### 3. Allocation Between Claims Is Effectively A Non-Issue

The Court noted the concern that "***[b]ecause Plaintiff cannot recover the Defaulted Defendants' sales as a remedy for the Defaulted Defendants' patent infringement***, Plaintiff needs to provide evidence as to what percentage of the Defaulted Defendants' sales are due to each type of intellectual property infringement." [Dkt. 120 {Order}, pp. 29 (emphasis in original)].

In response, plaintiff points out that plaintiff is ***not*** seeking ***both*** plaintiff's damages (available on patent, copyright and trademark claims) ***and*** the Defaulted Defendants' profits (available only on copyright and trademark claims). [Holstrom Decl., ¶¶10-15]. Thus, allocation between claims is not necessary.

"Because plaintiff is not seeking a double recovery, plaintiff's total lost profit damages for its patent, copyright and trademark claims will be the same regardless of any allocation among those claims made by the court. For instance, the court could allocate lost profit damages 60% for patent infringement and 40% for the packaging/manuals for copyright and trademark infringement claims as suggested by the court. [Dkt 120 {Order}, at p. 30] or any other allocation that adds up to 100%." [Holstrom Decl., ¶¶16].

As a practical matter, the patent, copyright and trademark claims are so interrelated that allocation is not necessary or meaningful. "Probably close to 100% of the customers buy Plaintiff's patented split end trimmer product because

it is the best way to cut split end hairs on the market." [Talavera Decl., ¶12(b)]. Customers, however, are attracted to and base their purchases on the text in the copyrighted packaging that shows the product and describes its functionality, so probably close to 80-100% of the customers buy the patented product as a result of the copyrighted packaging and manuals. [Talavera Decl., ¶12(c)].

This is not an insurance case involving covered and uncovered claims where allocation would be critical. *See Hanover Ins. Co. v. Anova Food, LLC*,, 2016 WL 3620730, at *15 (D. Haw. June 29, 2016). Rather, the instant is more akin to an insurance case where all claims are covered, so there is no reason to allocate.

Thus, the Court should award plaintiff's lost profit damages in the total amount of **$5,280,155.94** on plaintiff's patent, copyright and trademark claims based upon ***each*** Defaulted Defendants' actual selling prices. Any allocation between claims by the Court will not impact that plaintiff's total lost profit damages of **$5,280,155.94.** [Holstrom Decl., ¶16 and Ex. 2].

### B. Alternatively, Plaintiff Seeks Defendants' Lost Profits On Its Copyright and Trademark Claims

In the alternative to plaintiff's damages, plaintiff also establishes the Defaulted Defendants' profits for its copyright and trademark claims. [Holstrom Decl., ¶34].

In this case, Amazon's and eBay's records show that the 40 Defaulted Defendants collectively sold 88,406 units for total sales/revenues of **$6,606,245.94**. [Holstrom Decl., ¶35].

As discussed above, plaintiff only seeks the Defaulted Defendants' profits as an alternative remedy in the event plaintiff's lost profit damages are unavailable or lower. [Holstrom Decl., ¶¶15 and 17].

## III. INJUNCTIVE RELIEF AGAINST THE DEFAULTED DEFENDANTS

The Court noted the concern that Plaintiff's motion "fails to analyze the *eBay* factors to demonstrate Plaintiff's need for injunctive relief as to copyright,

trade dress, and/or patent infringement." [Dkt. 120 {Order}, pp. 29 (emphasis added)].

Although plaintiff cited the *eBay* factors in its prior briefing, plaintiff did not fully analyze them due to page limit issues and prior briefing in connection with the TRO. This court already issued a temporary injunction [Dkt. 10] that remains in place due to extensions [Dkt. 26 and 28].

In response, plaintiff now analyzes the four *eBay* factors of: "(1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"[;] and (4) it is in the public's interest to issue the injunction. *eBay*, 547 U.S. at 392–93.

The court has the power to issue a permanent injunction. *See* 17 U.S.C. §502(a) (copyright), 15 U.S.C. §1116(a) (trademark/trade dress), 35 U.S.C. §283 (patent).

**A. Factor 1: Irreparable Harm**

Plaintiff is likely to suffer irreparable harm in the absence of permanent injunctive relief.

Pursuant to a recent amendment to 15 U.S.C. §1116(a), irreparable harm is ***presumed*** on plaintiff's trademark claim. "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection." *Id*.

**1. Loss of Plaintiff's Right To Exclude Under Its Patents and Copyrights**

In the patent and copyright context, the Supreme Court in *eBay* expressly recognized rights to exclude under the Patent Act and the Copyright Act. "Like a patent owner, a copyright holder possesses 'the right to exclude others from using his property.'" *eBay*, 547 U.S. at 392 *quoting Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932). The concurring opinion of Chief Justice Roberts in *eBay* noted "the ***difficulty of protecting a right to exclude through monetary remedies*** . . .

often implicates the first two factors of the traditional four-factor test." *eBay Inc.*, 547 U.S. at 395 (emphasis added). The Supreme Court in *eBay* did not (and could not) rule that it nullified these exclusive rights granted by Congress.

Applying *eBay*, the Federal Circuit agrees that the right to exclude is very important to the irreparable harm inquiry. *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 642 (Fed. Cir. 2015). Justice Reyna's concurring opinion provides a very detailed analysis of *eBay* and the right to exclude that concludes: "Though we read ***eBay*** to overrule our presumption of irreparable injury, ***we cautioned that courts should not necessarily 'ignore the fundamental nature of patents as property rights granting the owner the right to exclude***.'" 809 F.3d at 649 *quoting Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed Cir. 2011). "While the patentee's right to exclude alone cannot justify an injunction, it should not be ignored either." *Robert Bosch LLC*, 659 F.3d at 1149.

In the copyright context, "infringement may still occur in such a manner that it has the actual effect of irreparably harming a plaintiff's right to control the use of his/her copyrighted material." *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1217 (C.D. Cal. 2007) ("*Grokster V*"). "As copyright owners, Plaintiffs have the exclusive right to decide when and how their material should be reproduced and/or distributed, regardless of whether their decisions make good business sense." *Id*. at 1218. *See also Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 968 (8th Cir. 2005) ("Taylor certainly has the right to control the use of its copyrighted materials, and irreparable harm inescapably flows from the denial of that right.").

In the instant case, "Plaintiff's patents and copyrights give it the exclusive right to make, use and sell Plaintiff's split-end hair trimmer, so Plaintiff should have 100% market share. Plaintiff suffers irreparable harm if it cannot enforce its rights to exclude under its patents and registered copyrights." [Talavera Decl., ¶16].

### 2. Past Infringement Plus Threat of Future Infringement

Courts have held that a finding of past infringement coupled with a threat of future violations is sufficient to constitute irreparable harm and does not run afoul of *eBay*. *Designer Skin, LLC v. S & L Vitamins, Inc.*, 2008 U.S. Dist. LEXIS 68467 (D. Ariz. Sept. 5, 2008) ("Whatever else might be said against the propriety of a rule that holds that past infringement plus the threat of future infringement equals irreparable harm, it seems clear to this Court that such a rule would not run afoul of eBay's directives"); *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, 2016 U.S. Dist. LEXIS 182644 *29 (S.D. Cal. Mar. 21, 2016) (same).

There is certainly the threat of future infringement by the Defaulted Defendants. [Talavera Decl., ¶¶14-17].

### 3. Multiplicity of Lawsuits

"[T]he very need to file multiple lawsuits . . . is itself supportive of an irreparable harm finding." *Grokster V*, 518 F. Supp. 2d at 1219.

Additionally, the remedy of a DMCA take down notice is completely inadequate. In plaintiff's experience, infringers are now filing false DMCA counter notices in response to DMCA take down notices to force plaintiff to file new lawsuits. [Talavera Decl., ¶18].

### 4. Price Erosion, Loss of Goodwill, Damage To Reputation, Loss of Business Opportunities

"Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). "Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013). *See also Brighton Collectibles, LLC v. IPPO Jewelry Corp.*, 2017 U.S. Dist. LEXIS 24868, at *10 (C.D. Cal. Feb. 22, 2017) (plaintiff "established irreparable harm, through loss of market share and reputational harm,

stemming from Defendant's infringement.").

Plaintiff's declaration details irreparable harm to its reputation if the Defaulted Defendants can resume their infringements. [Talavera Decl., ¶14].

**B. Factor 2: Inadequate Remedy At Law**

"There is significant overlap between 'inadequacy of legal remedies' and the 'irreparable injury' inquiry. *Mitchell v. 3PL Sys.*, 2013 U.S. Dist. LEXIS 199123, 12-13 (C.D. Cal. Apr. 8, 2013) *citing Grokster V*, 518 F. Supp. 2d at 1219 ("Often times the concepts of 'irreparable injury' and 'no adequate remedy at law' are 'indistinguishable' in the context of a permanent injunction.").

In the instant case, the same facts that show plaintiff's damage is irreparable also show plaintiff has no adequate remedy at law.

**C. Factor 3: Balance of Hardships**

"As to the third factor, the Court must consider the hardships that might afflict the parties by the grant or denial of Plaintiffs' motion for a permanent injunction." *MGM Studios, Inc.*, 518 F. Supp. 2d at 1221.

"As to the balance of hardships, Defendant suffers no injury due to an injunction other than what would 'be a result of [Defendant] ceasing the allegedly infringing conduct.'" *Malibu Media, LLC v. Sianturi*, 2017 U.S. Dist. LEXIS 123654 *17 (E.D. Cal. Aug. 3, 2017) *quoting Malibu Media, LLC v. Redacted*, 2016 U.S. Dist. LEXIS 89165 *11 (D. Md. July 11, 2016) *quoting Medias & Co., Inc. v. Ty, Inc.*, 106 F. Supp. 2d 1132, 1140 (D. Colo. 2000).

**D. Factor 4: Public Interest**

The public interest will be served with a permanent injunction, since it will protect plaintiff's patents, copyrights and trademarks against infringement. *MGM Studios, Inc.*, 518 F. Supp. 2d at 1222. *See also Broad. Music, Inc. v. Hathcock*, 2017 U.S. Dist. LEXIS 136310 (E.D. Cal. Aug. 23, 2017) ("the public interest would not be disserved by a permanent injunction restraining Defendants from infringing Plaintiffs' copyrights"); *Malibu Media, LLC v. Sianturi*, 2017 U.S. Dist.

LEXIS 123654 (E.D. Cal. Aug. 3, 2017); ("Finally, the prevention of copyright infringement serves the public interest.").

["T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple Inc. v. Samsung Elecs*. Co., 809 F.3d at 647. *See also T-C Forum at Carlsbad, Ltd. Liab. Co. v. Thomas Enters., Inc.*, 2017 U.S. Dist. LEXIS 129919, at *9 (S.D. Cal. Aug. 14, 2017) ("the public interest in maintaining vigorous protection for intellectual property rights also favors an injunction."); and *Go Daddy Operating Co., LLC v. Ghaznavi*, 2018 U.S. Dist. LEXIS 33002, at *39 (N.D. Cal. Feb. 28, 2018) ("The public has a strong interest in protecting trademarks.").

## IV. THIS COURT CAN EXPRESSLY DETERMINE UNDER RULE 54(b) THAT "THERE IS NO JUST REASON TO DELAY" ENTRY OF FINAL JUDGMENT AGAINST THE DEFAULTED DEFENDANTS

"[W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Rule 54(b).

"Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Rule 54(b).

"Deference is granted to the district court's decision because it is "the one most likely to be familiar with the case and with any justifiable reasons for delay.'" *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797 (9th Cir. 1991) (citations omitted). "The present trend is toward greater deference to a district court's decision to certify under Rule 54(b)." *Id.* at 798.

There is "no just reason to delay" entry of judgment against the Defaulted Defendants. The infringement liability and related relief against the Defaulted

Defendants. Thus, entry of default judgment and/or summary judgment against the Defaulted Defendants will help streamline the case.

Liability has also been established with respect to the sole remaining undefaulted defendant TAIZHOU. [Dkt. 118 {SJ Order}]. This Court noted that it "will leave the matter of whether Defendant was the manufacturer or source of any of the infringing products sold on Amazon.com or eBay to be resolved at trial." [Dkt. 118 {SJ Order}, at 4]. Thus, there is "no just reason to delay" entry of judgment against the Defaulted Defendants.

It appears that a final judgment under Rule 54(b) of the Defaulted Defendants would not be precluded by *Frow v. De La Vega*, 82 U.S. 552 (1872). In *Frow*, "the Supreme Court held that under certain circumstances, the court should not enter a default judgement against one or more defendants that is, or is likely to be, inconsistent with judgment on the merits in favor of the remaining answering defendant(s)." *Societe D'Equipments Internationaux Nig., Ltd. v. Dolarian Capital, Inc.*, 2016 U.S. Dist. LEXIS 60049, at *28 (E.D. Cal. May 4, 2016).

"'Most jurisdictions have narrowly construed *Frow* to bar entry of default judgment against one of several defendants only if 'the theory or recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant.'" S*ociete D'Equipments Internationaux Nig., Ltd*., 2016 U.S. Dist. LEXIS 60049, at *28 (E.D. Cal. May 4, 2016) *quoting Phoenix Renovation Corp. v. Gulf Coast Software, Inc.*, 197 F.R.D. 580, 582-83 (E.D. Va. 2000).

In S*ociete D'Equipments Internationaux Nig., Ltd*., the court found *Frow* did not apply and entered judgment against defendant DCI under Rule 54(b) while the action went forward as to defendant Doloria. The court explained:

> Put another way, SEI's claims for conversion and fraud can stand against DCI without necessarily finding Dolarian individually liable

as well. [n. 6]

n. 6. For example, ***while SEI may be entitled to judgment on its claim against DCI for fraud based upon DCI and its agents' repeated material misrepresentations***, see supra at IV(B)(2)(e), ***Dolarian may be able to prove he did not make any material misrepresentations as an individual or as an agent on behalf of DCI.*** See Shanghai Automation, 194 F. Supp. 2d at 1009.

* * *

***In sum, Frow does not preclude the entry of default judgment against DCI alone***. *See Shanghai Automation*, 194 F. Supp. 2d at 1008 (citing *Douglas,* 827 F.2d at 254-55 (observing that the *Frow* rule applies to cases where all the defendants were claimed to be jointly, not severally, liable))

2016 U.S. Dist. LEXIS 60049, at *28 (emphasis added). This is analogous to the primary defense of defendant TAIZHOU that it did not manufacture, sell or induce infringement even if the Defaulted Defendants infringed.

Accordingly, *Frow* does not bar final judgment against the Defaulted Defendants.

## V. CONCLUSION

For the foregoing reasons, this Court should enter a final monetary and injunctive relief judgment against the Defaulted Defendants pursuant to Rule 54(b) and pursuant to Rule 55 (default judgment) and/or 56 (summary judgment).

In the event the court declines to enter a final judgment at this time, this Court should reaffirm that the temporary/preliminary injunction remains in place until a final judgment in this matter.

Dated: September 8, 2021

Respectfully submitted,

LAW OFFICES OF DARREN J. QUINN
DARREN J. QUINN

s/s/ Darren J. Quinn
Darren J. Quinn

12702 Via Cortina, Suite 105
Del Mar, CA 92014
Tel: (858) 509-9401

SRIPLA, P.A.
JONAH A. GROSSBARDT

1801 Century Park E, Suite 1100
Los Angeles, CA 90067-2313
Tel: (323) 364-6565

*Attorneys for Plaintiff Talavera Hair Products, Inc.*