Darren J. Quinn (149679)
LAW OFFICES OF DARREN J. QUINN
12702 Via Cortina, Suite 105
Del Mar, CA 92014
Tel: (858) 509-9401

Jonah A. Grossbardt (283584)
SCHNEIDER ROTHMAN INTELLECTUAL
PROPERTY LAW GROUP PLLC
1801 Century Park East, Suite 1100
Los Angeles, CA 90067-2313
Tel: (323) 364-6565

*Attorneys for Plaintiff Talavera Hair Products, Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TALAVERA HAIR PRODUCTS, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>TAIZHOU YUNSUNG ELECTRICAL APPLIANCE CO., LTD., a business entity, and THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON EXHIBIT "1",<br><br>Defendants. | CASE NO. **18-cv-00823-BAS-JLB**<br><br>**AMENDED DECLARATION OF DAMAGE EXPERT RICHARD HOLSTROM IN SUPPORT OF MONETARY RELIEF AGAINST DEFAULTED DEFENDANTS**<br><br>Judge: Janis L. Sammartino<br>Date: October 14, 2021<br>Time: 1:30 p.m.<br>Courtroom: 4D<br>Edward J. Schwartz<br>U.S. Courthouse<br>221 West Broadway<br>San Diego, CA 92101 |

I, RICHARD HOLSTROM, declare:

1. I am a managing director at Baker Tilly Virchow Krause, LLP. I make this amended declaration in support of monetary relief against the Defaulted Defendants set forth below:

| *Defendant No.* | *Seller ID* | *Proof of Service of Summons* | *Default Request* | *Default Entered* |
|---|---|---|---|---|
| 3 | allforyoushopper.usa | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 4 | ANIMON | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 5 | anothercloud | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 6 | Aosend | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 7 | AoStyle | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 8 | AuPolus | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 11 | Beisirui Hair Store | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 12 | Cai ming zhil | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 14 | Ciao Fashion | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 19 | Enjoy&Life | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 20 | Fosen Man | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 22 | Georgy's Store | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 24 | Hairsmile | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 26 | Judi Shop | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 27 | Kosmasl | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 31 | Lanmpu Creative | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 32 | MKLOPED | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 34 | Mokshee Mokshee/Donop | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 35 | MyBeautyCC | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 37 | NewPollar | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 39 | Olungts US | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 40 | Puck Du/SmartGo | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 41 | PUTOS | Dkt. 25 | Dkt. 63 | Dkt. 65 |

| | | | | |
|---|---|---|---|---|
| 44 | SunNatural/SunNature | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 45 | Turritopsis nutricula | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 46 | Ukliss Beauty | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 47 | Wsduos | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 48 | Yara-Yarn | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 51 | Noledo | Dkt. 60 | Dkt. 63 | Dkt. 65 |
| 52 | nantongaotaiguoji Trading Co Ltd | Dkt. 60 | Dkt. 63 | Dkt. 65 |
| 53 | Beskol | Dkt. 60 | Dkt. 63 | Dkt. 65 |
| 54 | Chunhet | Dkt. 60 | Dkt. 63 | Dkt. 65 |
| 55 | Funny Fala | Dkt. 60 | Dkt. 63 | Dkt. 65 |
| 56 | Huixin Economic | Dkt. 60 | Dkt. 63 | Dkt. 65 |
| 57 | NeSexy | Dkt. 60 | Dkt. 63 | Dkt. 65 |
| 58 | Samantha Bowen | Dkt. 60 | Dkt. 63 | Dkt. 65 |
| 60 | Vanylihair | Dkt. 60 | Dkt. 63 | Dkt. 65 |
| 61 | YokEnjoy | Dkt. 60 | Dkt. 63 | Dkt. 65 |
| 75 | BEAUTYDESIGN | Dkt. 25 | Dkt. 63 | Dkt. 65 |
| 78 | S*SHOME | Dkt. 25 | Dkt. 63 | Dkt. 65 |

**Amended Declaration:**

2. I am submitting this amended declaration to update the Defaulted Defendants to omit Defaulted Defendant No. 36 who has settled. Additionally, my amended declaration addresses concerns raised by the court regarding monetary relief against the Defaulted Defendants. *See* [Dkt. 120 {Order}, at pp. 28-30].

**Damage Expert Qualifications**:

3. I have specialized training, skill and experience with respect to forensic accounting and damage analysis. My curriculum vitae is attached as **Exhibit 1**.

4. With more than 40 years of experience in forensic accounting, I have served as an expert in hundreds of disputes involving the quantification of business and personal damages.

5. I have been designated as an accounting expert in State Courts of California and Nevada and Federal Courts in California, Arizona, Nevada and Hawaii.

6. I have provided expert testimony in both depositions and at trial in excess of 100 times in the past 10 years on the quantification of business and personal economic damages related to business interruption losses, intellectual property infringement, fraud and personal injury.

**Infringing Sales**

7. I have reviewed the Declaration Authenticating Amazon Business Records ("Amazon Declaration") that describes the preparation of the Excel spreadsheet titled "Talavera - Sales (Highly Confidential.xls)" ("Amazon Spreadsheet") from which my attached summary of the 88,358 units sold that generated sales of $6,603,512.42 was derived with respect to thirty-eight (38) of the Defaulted Defendants. As an expert, I am comfortable relying upon the Amazon Declaration and the data from the Amazon Spreadsheet for my opinions. A summary of these Amazon sales by Defaulted Defendants is reflected in the attached **Exhibit 2**.

8. I also reviewed the Declaration Of Victor Talavera In Support Of Monetary and Injunctive Relief Against Defaulted Defendants. ("Talavera Dec."). Based upon eBay screenshots, it appears that two (2) other Defaulted Defendants collectively sold 48 units of infringing product at a total selling value of $2,733.52. A summary of these eBay sales by Defaulted Defendants is also reflected in the attached **Exhibit 2**.

9. Thus, the 40 Defaulted Defendants collectively sold a total of **88,406 units** that generated sales of **$6,606,245.94** for an average selling price per unit of **$74.73** ($6,606,245.94/88,406 units).

**<u>Plaintiff's Patent, Copyright And Trademark Claims All Allow Damages Based Upon Plaintiff's Lost Profits (Which Eliminate Double Recovery And Allocation Issues)</u>**

10. Plaintiff's patent, copyright and trademark claims all allow damages based upon plaintiff's lost profits.

11. In patent infringement cases, a patent owner is entitled to recover lost profits under 35 U.S.C. §284.[1] The Supreme Court recently reaffirmed that lost profits are recoverable:

> Under §284, damages are "adequate" to compensate for infringement when they "plac[e] [the patent owner] in as good a position as he would have been in" if the patent had not been infringed. *General Motors Corp., supra*, at 655, 103 S. Ct. 2058, 76 L. Ed. 2d 211. Specifically, a patent owner is entitled to recover "'the difference between [its] pecuniary condition after the infringement, and what [its] condition would have [**595] been if the infringement had not occurred.'" *Aro Mfg. Co., supra*, at 507, 84 S. Ct. 1526, 12 L. Ed. 2d 457. ***This recovery can include lost profits***. *See Yale Lock Mfg. Co. v. Sargent*, 117 U. S. 536, 552-553, 6 S. Ct. 934, 29 L. Ed. 954, 1886 Dec. Comm'r Pat. 172 (1886).

*WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2139 (2018).

12. "Under the *Panduit* test, a patentee is entitled to lost profit damages if it can establish four things:

(1) demand for the patented product;

(2) absence of acceptable non-infringing alternatives;

(3) manufacturing and marketing capability to exploit the demand; and

(4) the amount of profit it would have made."

---

[1] 35 U.S.C. §284 provides, in part: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017) *citing Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152 (6th Cir. 1978).\\

13. In copyright[2] and trademark[3] infringement cases, the intellectual property owner that has been infringed can recover its own actual damages in the form of lost profits. The intellectual property owner can also recover the infringer's profits as long as there is no duplication of these amounts.

14. There will be no possible duplication of recovery between plaintiff's damages based upon plaintiff's lost profit damages and the Defaulted Defendants' profits when only plaintiff's lost profit damages are sought.

15. Plaintiff does *not* seek recovery of *both* plaintiff's lost profit damages and the Defaulted Defendants' profits, so there is no double recovery. The Defaulted Defendants' profits are only sought in the alternative on plaintiff's copyright and trademark claims in the event that plaintiff's lost profit damages are unavailable or are lower.

16. Because plaintiff is not seeking a double recovery, plaintiff's total lost profit damages for its patent, copyright and trademark claims will be the same

---

[2] 17 U.S.C. §504(b) provides, in part:

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

[3] 15 U.S.C. §1117(a) provides, in part:

. . . the plaintiff shall be entitled, . . ., to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.

regardless any allocation among those claims made by the court. For instance, the court could allocate lost profit damages 60% for patent infringement and 40% for the packaging/manuals for copyright and trademark infringement claims as suggested by the court. [Dkt 120 {Order}, at p. 30] or any other allocation that adds up to 100%.

17. In contrast, if plaintiff was seeking *both* the Default Defendants' profits on the copyright and trademark infringement claims and plaintiff's lost profit damages on the patent infringement claim (which plaintiff is not), then there is the potential of a double recovery. To avoid this potential double recovery, my analysis focuses on just plaintiff's lost profit damages (with Defaulted Defendants' profits as an alternative in the event plaintiff's lost profit damages are unavailable or lower).

**Plaintiff's Lost Profits Damages Based Upon Actual Sales of the Defaulted Defendants**

18. As discussed below, plaintiff can seek lost profit damages based upon plaintiff's lost profits on the Defaulted Defendants' actual sales of **88,406 units**.

19. Plaintiff's lost profit per unit is generally calculated as the difference between plaintiff's selling price and plaintiff's cost.

20. Plaintiff's selling price was originally $249.99 per unit which eroded to $195.99. Talavera Decl., ¶¶5-6 and Exs. A and B.

21. Talavera has represented that it's incremental costs, including cost-of-goods sold and all other variable costs was $15 per unit. Talavera Decl., ¶7.

22. Thus, plaintiff's lost profit based the Defaulted Defendants' actual sales would normally be calculated as **$234.99 per unit** ($249.99 - $15 cost).

23. The court raised the concern "that a consumer who pays [$75][4] for a hair trimmer might never pay $250 for a product of similar function." [Dkt 120 {Order} at p. 30]. Stated another way, the court appears concerned the Defaulted Defendants may not have sold 88,406 units if their selling price had been $250 per unit.

24. To eliminate this concern, I very conservatively calculated plaintiff's lost profits based upon the Defaulted Defendants' actual selling prices (average selling price of $74.73) instead of plaintiff's selling price ($249.99). Since the Defaulted Defendants collectively sold 88,406 units at an average selling price of $74.73 on Amazon and eBay, it is reasonable to assume that plaintiff could have easily also sold 88,406 units at an average selling price of $74.73 on Amazon and eBay.

25. This very conservative amount results in a average lost profit of **$59.73 per unit** ($74.73 - $15 cost) based upon the Defaulted Defendants' average selling price ($74.73). For each Defaulted Defendant, however, I calculated plaintiff's lost profit damages based upon each of the Defaulted Defendants' actual sales. My calculation of plaintiff's lost profits based upon the Defaulted Defendants's actual sales is reflected in the attached **<u>Exhibit 2</u>**.

26. The first *Panduit* element (demand for the patented product)in this matter is satisfied by the Amazon and eBay records in this matter (as previously discussed) that indicate that 88,406 units of infringing product have been sold by the 40 Defaulted Defendants.

27. As to the second *Panduit* element (absence of acceptable

---

[4] The court's order refers to "$30" based upon plaintiff's incremental costs of "less than $30," but the context indicates the Defaulted Defendants' average selling price of $74.62 ($6,606,246/88,406 units).

non-infringing alternatives), it is my understanding that there were no acceptable non-infringing alternatives. Talavera states that his patented split-end hair trimmer on the market was the first and only product on the market to quickly and easily cut split-end hairs.

28. As to the third *Panduit* element (manufacturing and marketing capability to exploit the demand), Talavera states that it had manufacturing marketing capacity to produce the 88,406 units sold by the 40 defaulted defendants on Amazon. Talavera's patented split-end hair trimmers were also sold online (including Amazon) and shipped to customers.

29. As to the final *Panduit* element (the amount of profit it would have made), plaintiff has very conservatively determined lost profits based upon the Defaulted Defendants' actual sales prices that were much lower than plaintiff's sales prices. *See* **Exhibit 2**.

**Additional Lost Profits**

30. The Complaint puts the Defaulted Defendants on notice that Talavera has at least $46,250,000 in "lost profits." Complaint, 31-33. My calculation of "lost profits" of $5,280,155.94 above encompasses, in part, Talavera's "unit sales decreasing" and "lost business."

31. Because of concerns about the collectability of any judgment against the 40 Defaulted Defendants, I did not conduct a full "lost profits" analysis based upon price erosion. See Complaint, 31 ("Plaintiff's lost profits from price erosion are at least an additional $3 to $4 million."). If provided with Talavera's unit sales after it dropped its unit price from $249.99 to $199.99, then the basic measure of price erosion would be $50 ($249.99 - $199.99) multiplied by the units sold by Talavera in the United States after dropping the price to $199.99.

32. Similarly, my "lost profit" analysis above can also be applied to any evidence of additional lost sales of Talavera. If provided with such additional lost sales, then the basic measure would be to use my analysis above showing Talavera's lost profit/unit multiplied by any additional lost unit sales.

33. These calculations, if made, would apply to either the patent, copyright, or the trademark damages claims.

**Alternative Defaulted Defendants' Lost Profits For Copyright And Tradement Infringement**

34. In the alternative to plaintiff's damages, plaintiff also establishes the Defaulted Defendants' profits.

35. With respect to establishing the infringers' lost profits, plaintiff only has the burden to show the infringing revenues/sales on its copyright and trademark infringement claims. See 17 U.S.C. §504(b) ("the copyright owner is required to present proof only of the infringer's gross revenue") and 15 U.S.C. §1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only").

36. In this case, Amazon's and eBay's records show that the 40 Defaulted Defendants collectively sold 88,406 units for total sales/revenues of **$6,606,245.94**. The infringing revenues/sales for each of the 40 Defaulted Defendants are set forth on **Exhibit 2**.

37. Recovery of the Defaulted Defendants' profits is not authorized for patent infringement. Accordingly, any allocation among the claims would need to allocate patent infringement as 0%. For instance, the court could allocate the patent infringement claim at 0% and the copyright and trademark infringement claims collectively or separately at any percentage that adds up to 100%.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of September, 2021 at San Diego, California.

RICHARD HOLSTROM, CPA, ABV, CFF, CFE