UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TALAVERA HAIR PRODUCTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TAIZHOU YUNSUNG ELECTRICAL APPLIANCE CO., LTD. et al.,<br><br>Defendants. | Case No.: 18-cv-00823-RBM-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR MONTETARY AND INJUNCTIVE RELIEF AGAINST DEFAULTED DEFENDANTS**<br><br>[Doc. 125] |

Presently before the Court is Plaintiff Talavera Hair Products, Inc.'s ("Plaintiff") motion for monetary and injunctive relief against the Defaulted Defendants[1] ("Motion").

---

[1] The "Defaulted Defendants" are those against whom Plaintiff secured an entry of default on February 21, 2019, minus those who have since been dismissed, namely: allforyoushopper.usa (3), ANIMON (4), anothercloud (5), Aosend (6), AoStyle (7), AuPolus (8), Beisirui Hair Store (11), Cai ming zhil (12), Ciao Fashion (14), Enjoy&Life (19), Fosen Man (20), Georgy's Store (22), Hairsmile (24), Judi Shop (26), Kosmasl (27), Lanmpu Creative (31), MKLOPED (32), Mokshee Mokshee/Donop (34), MyBeautyCC (35), NewPollar (37), Olungts US (39), Puck Du/SmartGo (40), PUTOS (41), SunNatural/SunNature (44), Turritopsis nutricula (45), Ukliss Beauty (46), Wsduos (47), Yara-Yarn (48), Noledo (51), nantongaotaiguoji Trading Co Ltd (52), Beskol (53), Chunhet (54), Funny Fala (55), Huixin Economic (56), NeSexy (57), Samantha Bowen (58), Vanylihair (60), YokEnjoy (61), BEAUTYDESIGN (75), and S*SHOME (78). (*See*

1

(Doc. 125.) No Defaulted Defendant has filed a response to Plaintiff's Motion. The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (*See* Doc. 126.) For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion.

## I. BACKGROUND

### A. Plaintiff's Claims

Plaintiff is the seller of "a unique and revolutionary patented product under the federally registered trademark Split-Ender® that quickly and easily trims split ends from hair." (Doc. 1, Compl. ¶ 13.) "Plaintiff owns copyrights, trademark rights[,] and patent rights regarding its Split-Ender® product." (*Id.* ¶ 16; *see also* Docs. 1-4, 1-5, 1-6, 1-7.)

On April 30, 2018, Plaintiff filed this action against dozens of entities and individuals alleging: (1) copyright infringement pursuant to 17 U.S.C. §§ 101 *et seq.*; (2) unfair competition pursuant the Lanham Act, 15 U.S.C. § 1125(a); (3) trademark infringement pursuant to 15 U.S.C. § 1114; and (4) infringement of Plaintiff's U.S. Patent Nos. 6,588,108, 7,040,021, and 9,587,811 (collectively, the "U.S. Patents") pursuant to 35 U.S.C. § 271(a). (Doc. 1 ¶¶ 40–84.) Plaintiff alleges that Defendants, with "full knowledge of Plaintiff's copyrights, trademark rights and/or patent rights," (*id.* ¶ 20), "are promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's Split-Ender® hair trimmers in interstate commerce that infringe Plaintiff's copyrights, trademark rights, and patent rights" on Amazon and/or eBay. (*Id.* ¶ 21.)

### B. Procedural History

On May 3, 2018, Plaintiff filed a motion for a temporary restraining order ("TRO"). (Doc. 9.) On May 10, 2018, the Court granted Plaintiff's motion. (Doc. 10.) The Court enjoined "[e]ach Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having

---

*generally* Doc. 111.) The number in parentheses after each Defendant's name is the "Defendant Number." *See id.*

notice of this Order . . . from making, manufacturing, or causing to be manufactured, importing, using, advertising or promoting, distributing, selling or offering to sell split end hair trimmer products . . . that infringe" the U.S. Patents; "from infringing any of the exclusive rights in 17 U.S.C. § 106 with respect to Plaintiff's copyrighted packaging or from using Plaintiff's distinctive trade dress packaging on Defendants' packaging;" from infringing Plaintiff's copyrighted manual; and "from infringing, counterfeiting, or diluting Plaintiff's registered Split-Ender® trademark." (*Id*. at 9–10.) The TRO was subsequently extended on September 18, 2018 and remains in place. (Doc. 57 at 2.)

On May 23, 2018, Plaintiff filed a motion requesting authorization for alternative service on Defendants. (Doc. 18.) On May 24, 2018, the Court granted Plaintiff's motion and authorized service on Defendants by e-mail and website publication. (Doc. 19.) On May 31, 2018, Plaintiff filed a Proof of Service of Summons and Complaint on Defendants 1, 2, 3, 4, 5, 6, 7, 8, 11, 12, 14, 15, 16, 19, 20, 21, 22, 24, 25, 26, 27, 29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 43, 44, 45, 46, 47, 48, 75, 76, 77, and 78. (Doc. 25.) On September 27, 2018, Plaintiff filed a Proof of Service of Summons and Complaint on Defendants 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, and 61. (Doc. 60.) Plaintiff then filed a request for Clerk's entry of default as to the Defaulted Defendants (Doc. 63), which the Clerk entered on February 21, 2019. (Doc. 65.)

On March 16, 2020, Plaintiff filed a motion for default judgment and/or summary judgment against the Defaulted Defendants. (Doc. 98.) On July 17, 2020, Plaintiff filed a motion for partial summary judgment against the only non-Defaulted Defendant, Taizhou Yungsung Electrical Appliance Co., Ltd. ("Defendant Taizhou"). (Doc. 107.)

On November 5, 2020, the Court denied the motion for default judgment without prejudice and requested supplemental briefing from Plaintiff regarding the Court's personal jurisdiction over the Defaulted Defendants. (Doc. 110.) Plaintiff filed its revised motion for default judgment on December 4, 2020 (Doc. 111), along with supplemental briefing on the Court's personal jurisdiction over the Defaulted Defendants. (Doc. 112.) On March 4, 2021, the Court granted in part and denied in part Plaintiff's motion for partial

summary judgment as to Defendant Taizhou. (Doc. 118.)

**C. August 6, 2021 Order on Plaintiff's Motion for Default Judgment**

On August 6, 2021, the Court issued an Order granting in part and denying in part Plaintiff's motion for default judgment and/or summary judgment against the Defaulted Defendants (the "August 6 Order"). (Doc. 120.) Specifically, the Court granted default judgment in favor of Plaintiff against the Defaulted Defendants, finding that all seven factors set out by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) weighed in favor of entering a default judgment against the Defaulted Defendants. (*Id*. at 28.) Having granted Plaintiff's motion for default judgment against the Defaulted Defendants, the Court next considered the appropriateness of Plaintiff's requested relief, including: (1) Plaintiff's lost profits; (2) the Defaulted Defendants' sales; (3) a permanent injunction; and (4) entry of final judgment against the Defaulted Defendants pursuant to Federal Rule of Civil Procedure 54(b). (*Id*. at 28–32.)

The Court first considered Plaintiff's request for monetary relief. (*Id*. at 28–31.) The Court found several issues with Plaintiff's request, including:

1. Plaintiff appeared to seek an award of both $19,539,731.79 calculated from Plaintiff's lost profits and $6,627,814.94 calculated from the Defaulted Defendants' sales, but failed to indicate how Plaintiff calculated its damages to prevent an impermissible double recovery. (*Id*. at 29); *see also* 17 U.S.C. § 504(b); 15 U.S.C. § 1117(a); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010–11 (9th Cir. 1994) ("[T]he recovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act.").

2. The Court found that Plaintiff failed to provide sufficient evidence to support its request for lost profits, because "Plaintiff conclusorily claims that its incremental costs are 'less than $30 a unit,' but provides no evidence to support its assertion that it makes a rather incredible profit of approximately $220 per unit." (Doc. 120 at 29–30.) The Court also expressed its concern "that a consumer who pays

$30 for a hair trimmer might never pay $250 for a product of similar function." (*Id*. at 30.) The Court held that, "[u]nless Plaintiff can provide specific evidence to support these foundational, but presently only conclusorily alleged, facts, those facts cannot be established on default." (*Id*.) (citing *Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir. 1992)).

3. Finally, the Court found that Plaintiff failed to "apportion[] the damages calculated from the Defaulted Defendants' sales among the different types of infringement alleged." (*Id*.) The Court explained that, "[b]ecause Plaintiff cannot recover the Defaulted Defendants' sales as a remedy for the Defaulted Defendants' patent infringement, Plaintiff needs to provide evidence as to what percentage of the Defaulted Defendants' sales are due to each type of intellectual property infringement." (*Id*.)

Next, the Court considered Plaintiff's request for a permanent injunction against the Defaulted Defendants. (*Id*. at 31.) The Court found that, although Plaintiff "may be entitled to permanent injunctive relief against the Defaulted Defendants," "Plaintiff has failed to prove up adequately its entitlement to said relief." (*Id*.) Specifically, the Court found Plaintiff failed to analyze the factors under *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006). (*Id*.)

The Court also declined to enter a final judgment under Federal Rule of Civil Procedure 54(b) given Plaintiff's insufficient evidence in support of its request for monetary and injunctive relief. (*Id*. at 32.) Accordingly, the Court denied without prejudice Plaintiff's requested relief, and granted Plaintiff leave to file a "motion for monetary and injunctive relief against the Defaulted Defendants supported by adequate evidence" within 30 days of the Court's order. (*Id*.)

/ / /
/ / /
/ / /
/ / /

**D. Plaintiff's Motion for Monetary and Injunctive Relief Against the Defaulted Defendants**

Plaintiff filed the instant Motion on October 8, 2021.[2] (Doc. 125.) With its Motion, Plaintiff filed: (1) a declaration from Plaintiff's President Victor Talavera (Doc. 125-2); (2) an amended declaration from Plaintiff's damages expert, Certified Public Accountant Richard Holstrom (Doc. 127-7); and (3) various exhibits. (*See* Docs. 125-3, 125-4, 125-5, 125-6.) Plaintiff also filed two documents under seal to support its claim that Plaintiff's incremental costs total $15 per unit: (1) a Confidential Declaration of Victor Talavera; and (2) an invoice and shipping document attached as Exhibit 1 to the Confidential Talavera Declaration. (*See* Docs. 122, 123.) On October 8, 2021, the Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (Doc. 126.) On June 3, 2022, the Court ordered Plaintiff to file a copy of the Excel spreadsheet titled "Talavera - Sales (Highly Confidential.xls)" which was produced by non-party Amazon.com Services Inc., which Plaintiff and its expert rely on in calculating Plaintiff's monetary damages. (Doc. 131.) Plaintiff lodged the requested information with the Court that same day. (Doc. 132.)

## II.  DISCUSSION

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "Plaintiff is required to prove all damages sought in the complaint." *Phillip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). "To prove damages, a plaintiff may submit declarations, or the

---

[2] Plaintiff initially filed the instant Motion on September 8, 2021, complying with the Court's August 6 Order requiring Plaintiff to file a motion within 30 days. (Doc. 121.) On October 8, 2021, Plaintiff filed a notice of withdrawal of its motion for monetary and injunctive relief against the Defaulted Defendants on the grounds that Plaintiff's filing was incomplete, noting that Plaintiff was refiling a complete version of the motion the same day. (Doc. 124.)

Court may hold an evidentiary hearing." *Spikes v. Mann*, No. 19-CV-633-JLS-RBB, 2020 WL 5408942, at *2 (S.D. Cal. Sept. 9, 2020). "Plaintiff's burden in 'proving up' damages is relatively lenient." *Phillip Morris*, 219 F.R.D. at 498. Additionally, the remedies sought by "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the [complaint]." FED. R. CIV. PRO. 54(c).

Here, Plaintiff's Complaint included a prayer for lost profits, the Defaulted Defendants' sales, and a permanent injunction enjoining further infringement. (*See* Doc. 1 at 27–31.) In the instant Motion, Plaintiff seeks the same relief as in its Complaint: lost profit damages (or, in the alternative, Defendants' lost profits) and a permanent injunction enjoining the Defaulted Defendants' infringing conduct. (*See* Doc. 125-1.) Plaintiff also seeks entry of final judgment against the Defaulted Defendants. (Doc. 125-1 at 14–16.) The Court will address each of Plaintiff's requests for relief in turn.

**A. Damages**

Plaintiff seeks "lost profit damages in the total amount of $5,280,155.94 on plaintiff's patent, copyright and trademark claims based upon each Defaulted Defendants' actual selling prices." (Doc. 125-1 at 9 (emphasis omitted).) In support of its request for lost profits, Plaintiff filed: (1) an amended declaration from Plaintiff's damages expert, Richard Holstrom (Doc. 125-7); (2) a declaration from Plaintiff's President Victor Talavera (Doc. 125-2); and (3) a confidential declaration from Victor Talavera, which Plaintiff filed under seal (Doc. 123). Upon the Court's request, Plaintiff also filed a copy of the business records obtained from Amazon.com Services Inc. (Doc. 132.)

The Copyright Act provides that a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue." *Id*. Similarly, for trademark infringement, a plaintiff is entitled "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the

action." 15 U.S.C. § 1117(a). The Ninth Circuit has held, however, that damages calculated from both the plaintiff's lost profits and the infringer's sales are generally considered an impermissible double recovery. *See Nintendo*, 40 F.3d at 1010. Like the Copyright Act, the Lanham Act requires the plaintiff to prove only the defendant's sales. 15 U.S.C. § 1117(a). Upon a finding of patent infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. "Two alternative methods exist for calculating damages in a patent case; they 'are the patentee's lost profits and the reasonable royalty he would have received through arms-length bargaining.'" *DataQuill Ltd. v. High Tech Comput. Corp.*, 887 F. Supp. 2d 999, 1020 (S.D. Cal. 2011) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)).

Plaintiff first attempts to address two of the concerns raised by the Court in its August 6 Order. *See supra* Section I.C. In response to the Court's concern that Plaintiff appeared to seek a double recovery of both $19,539,731.79 calculated from Plaintiff's lost profits and $6,627,814.94 calculated from the Defaulted Defendants' sales (*see* Doc. 120 at 29), Plaintiff and its expert clarify that Plaintiff seeks only lost profits in the amount of $5,280,155.94, based on the Defaulted Defendants' sales of 88,406 infringing units. (Doc. 125-1 at 3–4; Doc. 125-7 ¶¶ 14–17, 30; Doc. 125-9.) Because Plaintiff seeks only lost profits damages, which are available on Plaintiff's patent, copyright, and trademark claims, Plaintiff argues that any potential allocation issues identified by the Court are circumvented. (*See* Doc. 125-1 at 5–6; Doc. 125–7 ¶¶ 10–17.) The Court finds Plaintiff's clarification sufficient and will examine only Plaintiff's request for lost profit damages on its copyright, trademark, and patent claims.

Plaintiff bases its lost profits calculation on the Defaulted Defendants' sales of 88,406 infringing units. (Doc. 125-7 at 3–6.) For each of the 38 Defaulted Defendants who made sales on Amazon, Plaintiff's damages expert, Holstrom, reviewed the sales records Plaintiff subpoenaed from Amazon, "from which [Holstrom's] attached summary

of the 88,358 units sold that generated sales of $6,603,512.42 was derived." (Doc. 125-7 ¶ 7; *see also* Doc. 111-26.)  Regarding the two Defaulted Defendants who Plaintiff claims made infringing sales on eBay (BEAUTYDESIGN and S*SHOME), Holstrom reviewed the eBay screenshots provided by Plaintiff, which Plaintiff and Holstrom allege show "that two (2) other Defaulted Defendants collectively sold 48 units of infringing product at a total selling value of $2,733.52." (Doc. 125-7 ¶ 8.)  Holstrom has summarized the Amazon and eBay sales made by each of the 40 Defaulted Defendants in Exhibit 2 to the Holstrom Declaration.  (*See* Doc. 125-9).  He concludes that "the 40 Defaulted Defendants collectively sold a total of 88,406 units that generated sales of $6,606,245.94 for an average selling price per unit of $74.73 ($6,606,245.94/88,406 units)." (Doc. 125-7 ¶ 9.)

The Court finds that Plaintiff has adequately proven, based on the Amazon records and analysis by Plaintiff's expert, the number of units sold and selling price per unit for each of the 38 Defaulted Defendants who sold units on Amazon. (*See* Docs. 125-9, 132.) However, the Court finds that Plaintiff has failed to adequately prove sales made on eBay by two of the Defaulted Defendants.  Regarding Defaulted Defendant No. 75 (BEAUTYDESIGN), Plaintiff provided "a March 2, 2018 notice to eBay [which] shows that Defaulted Defendant had 28 units available, so it is likely 28 infringing unites [sic] were sold at the 'Buy it Now' price of $36.99/unit." (Docs. 125-2 ¶ 10; 125-6.)[3]  Because Plaintiff fails to provide anything beyond mere conjecture that BEAUTYDESIGN sold the 28 units that it advertised on eBay, the Court does not find that damages for these 28 units are warranted.  *Phillip Morris*, 219 F.R.D. at 498 ("Plaintiff is required to prove all

---

[3] Although Plaintiff writes that Defaulted Defendant No. 75 BEAUTYDESIGN "sold 16 units and had four available, so it is likely 20 infringing units were sold at $84.89/unit," and Defaulted Defendant No. 78 S*SHOME "had 28 units available," Doc. 125-2 ¶ 10, the Court finds that these figures are misplaced.  The eBay screenshots provided by Plaintiff show that Defaulted Defendant No. 78 S*SHOME sold 16 units at a price of $84.99 per unit (*see* Doc. 125-5 at 1), and Defaulted Defendant No. 75 BEAUTYDESIGN advertised 28 units available (*see* Doc. 125-6 at 1–2).  The Court will review Plaintiff's lost profits request accordingly.

damages sought in the complaint."). Regarding Defaulted Defendant No. 78 (S*SHOME), Plaintiff argues that "an eBay screen shot dated March 21, 2018 shows that Defaulted Defendant [S*SHOME] sold 16 units and had four available, so it is likely 20 infringing units were sold at $84.89/unit." (Docs. 125-2 ¶ 10(b); 125-5.) The Court finds this evidence insufficient to prove that Defaulted Defendant No. 78 (S*SHOME) made 20 infringing sales. Unlike the evidence that Plaintiff has provided for each of the infringing sales made on Amazon (i.e., records from Amazon itself), Plaintiff offers only a screenshot of an eBay webpage. Plaintiff has not provided any additional information in support of his claim that these sales were completed at the advertised price. *See Elektra Ent. Grp., Inc. v. Bryant*, No. CV 03-6381GAF-JTLX, 2004 WL 783123, at *5 (C.D. Cal. Feb. 13, 2004) ("Plaintiffs must 'prove up' the amount of damages that they are claiming."). Accordingly, Plaintiff's request for lost profits should be reduced by: (1) 28 unit sales from Defaulted Defendant No. 75 (BEAUTYDESIGN); and (2) 20 unit sales from Defaulted Defendant No. 78 (S*SHOME).

      Because Plaintiff has presented adequate proof of the Defaulted Defendants' sales (subject to the reductions with respect to BEAUTYDESIGN and S*SHOME discussed above), the Court finds that lost profit damages are appropriate on Plaintiff's copyright and trademark claims. *See* 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue."); 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only."). The Court will next address whether lost profit damages are appropriate for the Defaulted Defendants' infringement of Plaintiff's patents.

      In the patent context, lost profit damages are recoverable if the patent holder can demonstrate that there is a reasonable probability that, but for the infringement, the patent holder would have made the infringer's sales. *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1148 (N.D. Cal. 2003); *see also Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003) (citing *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995)). "The methodology of assessing and computing damages is

committed to the sound discretion of the district court." *Perego*, 65 F.3d at 952 (quoting *State Indus., Inc. v. Mor–Flo Indus.*, Inc., 883 F.2d 1573, 1576–77 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1022 (1990)).

"To determine whether a plaintiff has established what profits it would have made absent the infringement, courts typically rely on the test set out in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)." *Viasat, Inc. v. Space Sys./Loral, Inc.*, No. 3:12-CV-00260-MLH-WVG, 2014 WL 3896073, at *11 (S.D. Cal. Aug. 8, 2014). Under *Panduit*, "a patent owner must prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made." *Panduit*, 575 F.2d at 1156.

Applying the four *Panduit* factors, the Court finds "that there is a reasonable probability that [Plaintiff] would have made the infringer's infringing sales 'but for' the infringement." *Illinois Tool Works, Inc. v. MOC Prod. Co.*, No. 09CV1887-JLS-MDD, 2012 WL 3561984, at *5 (S.D. Cal. Aug. 17, 2012). First, Plaintiff has adequately proven demand for its Split-Ender product. *Panduit*, 575 F.2d at 1156. Plaintiff has shown that over 88,000 infringing units have been sold by the Defaulted Defendants on Amazon and eBay. (Docs. 125-5; 125-6; 125-7 ¶ 26; 125-8.) Regarding the second *Panduit* factor—absence of non-infringing alternatives—Plaintiff's President alleged that "Plaintiff's patented split-end trimmer on the market was the first and only product on the market to quickly and easily cut split-end hairs. There were and are no acceptable non-infringing alternatives." (Doc. 125-2 ¶ 2.) Third, Plaintiff has adequately alleged that it had the "manufacturing and marketing capability to produce the 88,406 united sold by the 40 Defaulted Defendants on Amazon and eBay." (Doc. 125-2 ¶ 11.)

The fourth factor in the *Panduit* test asks whether the plaintiff has adequately proven "the amount of the profit he would have made." *Panduit*, 575 F.2d at 1156. In evaluating Plaintiff's first motion for default judgment, the Court found that Plaintiff failed to provide sufficient evidence to support its request for its lost profits. (*See* Doc. 120 at 29–30.)

Specifically, the Court found that "Plaintiff conclusorily claims that its incremental costs are 'less than $30 a unit,' but provides no evidence to support its assertion that it makes a rather incredible profit of approximately $220 per unit." (*Id*. at 30 (quoting Doc. 111-27 ¶ 16).) The Court also expressed its concern "that a consumer who pays $30 for a hair trimmer might never pay $250 for a product of similar function." (*Id*.) In response, Plaintiff filed two documents under seal which it says supports its claim that Plaintiff's incremental costs total $15 per unit: (1) the Confidential Declaration of Victor Talavera in Support of Monetary Relief Against Defaulted Defendants (the "Talavera Declaration"); and (2) an invoice and shipping document attached as Exhibit 1 to the Talavera Declaration. (*See* Docs. 125-1 at 4–5, 122, 123.)

Plaintiff's expert, Holstrom, argues that Plaintiff can seek lost profit damages based on Plaintiff's lost profits on the Defaulted Defendants' sales of 88,406 infringing units. (Doc. 125-7 ¶ 18.) Holstrom calculates lost profits as the difference between Plaintiff's selling price and Plaintiff's cost. (Doc. 125-7 ¶ 19.) Regarding Plaintiff's selling price, Plaintiff claims that its original selling price was $249.99 per unit, which eroded to $195.99. (Doc. 125-2 ¶¶ 5–6; Doc. 125-7 ¶ 20.) Plaintiff alleges that, "[f]rom at least 2014 to 2016, Plaintiff's authentic Split-Ender Pro product was sold for about $249.99 *plus shipping*." (Doc. 125–2 ¶ 5 (emphasis omitted); *see also* Doc. 125-3 at 1.) Plaintiff further alleges that due "in substantial part" to "Defaulted Defendants' infringing items, Plaintiff's authentic Split-Ender Pro product now sells on Amazon for $195.99 *including shipping*." (Doc. 125–2 ¶ 6 (emphasis omitted); *see also* Doc. 125-4.) Although "plaintiff's lost profit based on the Defaulted Defendants' actual sales would normally be calculated as $234.99 per unit ($249.99 - $15 cost)," (Doc. 125-7 ¶ 2), Holstrom instead "very conservatively calculated plaintiff's lost profits based upon the Defaulted Defendants' actual selling prices (average selling price of $74.73) instead of plaintiff's selling price ($249.99)." (Doc. 125-7 ¶ 24.) Holstrom alleges "[s]ince the Defaulted Defendants collectively sold 88,406 units at an average selling price of $74.73 on Amazon and eBay, it is reasonable to assume that [P]laintiff could have easily also sold 88,406 units at an average selling price of $74.73 on

Amazon and eBay." (*Id*.) Holstrom relies on Plaintiff's costs representation in calculating Plaintiff's lost profits. (*See* Doc. 125-7 ¶ 21 ("Talavera has represented that it[s] incremental costs, including cost-of-goods sold and all other variable costs was $15 per unit.").)

Having carefully reviewed the evidence provided by Plaintiff, the Court finds that Plaintiff has adequately proven, for each of the sales made on Amazon, the amount of profit Plaintiff would have made but for the Defaulted Defendants' infringement. *Panduit*, 575 F.2d at 1156. First, the Court finds that the invoice and shipping document Plaintiff filed under seal does appear to show that, for each Split-Ender unit, Plaintiff's costs include $13 per unit purchase price and approximately $2 per unit shipping price, for a total cost per unit of approximately $15. (*See* Doc. 123 at 3–6.) Plaintiff has also adequately addressed the Court's concern that the Defaulted Defendants may not have sold over 88,000 units if their selling price had been $249.99 per unit (Plaintiff's selling price from approximately 2014 to 2016) or even $195.99 (Plaintiff's current selling price on Amazon) by choosing to use each Defendant's actual selling price as a benchmark for Plaintiff's lost profits. The Court finds Plaintiff's calculation of lost profits based upon the Defaulted Defendants' actual selling prices (for an average selling price of $74.73 per unit) to be a reasonable estimate of Plaintiff's profits lost to the Defaulted Defendants' infringement. (*See* Doc. 125-7 ¶¶ 23–25.)

Accordingly, the Court finds that Plaintiff had adequately proven its lost profit damages for the Defaulted Defendants' copyright, trademark, and patent infringement reflected in Doc. 125-9, aside from sales made by Defaulted Defendant No. 75 (BEAUTYDESIGN) and Defaulted Defendant No. 78 (S*SHOME). Plaintiff is not entitled to recover lost profit damages from Defaulted Defendant No. 75 (BEAUTYDESIGN) or Defaulted Defendant No. 78 (S*SHOME), given the insufficient evidence of eBay sales that Plaintiff attached to its Motion. In total, Plaintiff is entitled to lost profit damages in the amount of $5,278,142.42 from the Defaulted Defendants who sold on Amazon.

## B. Injunctive Relief

Plaintiff also seeks to permanently enjoin the Defaulted Defendants' copyright, trade dress, and patent infringement. (Doc. 125-1 at 6–11.) Under 17 U.S.C. § 502, "any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993). The Lanham Act also "vests the district court with the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (quoting 15 U.S.C. § 1116(a)). Indeed, injunctive relief is considered "the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Similarly, under the Patent Act, a court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

Parties seeking a permanent injunction must satisfy a four-factor test under the principles of equity: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Ultimately, "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts." *Id*. at 394.

///

*1. Irreparable Harm*

"[W]hen a plaintiff establishes in a trademark infringement or unfair competition action a likelihood of confusion, it is generally presumed that the plaintiff will suffer irreparable harm if an injunction is not granted." *Otter Prods., LLC v. Berrios*, No. 13–cv–4384–RSWL–AGRX, 2013 WL 5575070, *11 (C.D. Cal. Oct. 10, 2013) (citing *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989)). In the patent context, "[w]here two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). Furthermore, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001).

Plaintiff has shown a likelihood of confusion as to the origin of the infringing products, and thus a potential loss of prospective customers, as well as harm to Plaintiff's reputation if the infringing products are inferior to Plaintiff's Split-Ender product. (*See* Doc. 1 ¶¶ 30, 35; *see also* Doc. 111-3 ¶ 12.) For example, Plaintiff has alleged that "[c]onsumers have contacted Plaintiff regarding warranty claims (e.g. missing battery) for Defaulted Defendants' products," including a consumer who sent a photograph of a unit missing a battery with evidence from the unit's packaging that the infringing unit was not sold by Plaintiff. (Doc. 111-3 ¶ 12.) Plaintiff also directly competes with the Defaulted Defendants, including the 38 Defaulted Defendants who, like Plaintiff, sell products on Amazon. If the Defaulted Defendants continue to sell inferior products on Amazon and eBay, there is a reasonable chance that Plaintiff will lose prospective customers or current customers dissatisfied with the product quality. The Court finds that Plaintiff will be irreparably harmed by the Defaulted Defendants' infringement of Plaintiff's product.

/ / /

### 2. Inadequate Remedies at Law

"[T]he requisite analysis for the second factor of the four-factor test inevitably overlaps with that of the first." *eBay Inc.*, 500 F. Supp. 2d at 582. Inadequacy can be shown where the harmed party will have trouble collecting damages or where a legal remedy would require a multiplicity of suits. *Metro–Goldwin–Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1219–20 (C.D. Cal. 2007). "Damage to reputation and loss of customers are intangible harms not adequately compensable through monetary damages." *Car–Freshner Corp. v. Valio, LLC*, No. 2:14–cv–01471–RFB–GWF, 2016 WL 7246073, *8 (D. Nev. Dec. 15, 2016). Loss of sales and loss of business opportunities due to a defendant's infringement can support a finding of inadequate remedies at law. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 645 (Fed. Cir. 2015); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1340 (Fed. Cir. 2012). "Finally, this factor favors an injunction where '[t]here is no reason to believe that [the defendant] will stop infringing, or that the irreparable harms resulting from its infringement will otherwise cease, absent an injunction.'" *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-CV-02061-MLH-BGS, 2018 WL 9903323, at *9 (S.D. Cal. Aug. 13, 2018), *aff'd*, 784 F. App'x 786 (Fed. Cir. 2019), *and order dissolved*, No. 14-CV-02061-MLH-BGS, 2020 WL 6561431 (S.D. Cal. Nov. 9, 2020) (citation omitted).

First, Plaintiff alleges that it has an inadequate remedy at law because "[a]ny judgment against the Defaulted Defendants is likely effectively uncollectible against the Defaulted Defendants in China" and "Plaintiff will only recover the monies frozen by Amazon pursuant to the TRO [Dkt[.] 10] with respect to the Defaulted Defendants." (Doc. 125-2 ¶ 17.) Because 38 of the Defaulted Defendants sold items on Amazon, the Court finds that Plaintiff will likely recover most of its lost profits from those funds frozen by Amazon. However, Plaintiff has also shown a risk of ongoing damage to its reputation, including due to consumers' warranty claims for the Defaulted Defendants' products. (*See* Doc. 111-3 ¶ 12.) *See Wecosign, Inc. v. IFT Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("if an injunction were not granted, plaintiff would suffer irreparable

injury from the ongoing damages to its goodwill and diversion of customers to counterfeit services"). Plaintiff also alleges that it lost business opportunities due to the Defaulted Defendants' infringement. (*See* Doc. 125-2 ¶ 8.) Specifically, Plaintiff alleges that "[n]egotiations [with Sally Beauty Supply and Salon Centric] fell through because Plaintiff's wholesale price of $125 per unit was higher than the $75 average retail price of the Defaulted Defendants selling on Amazon and eBay." (*Id.*) Plaintiff also alleges that unless enjoined, the Defaulted Defendants will continue to infringe upon Plaintiff's copyrights, trademarks, and patents. (Doc. 125-2 ¶¶ 13–18.) For these reasons, the Court finds that Plaintiff has no adequate remedy at law.

### 3. Balance of Hardships

Furthermore, the balance of hardships favors Plaintiff as it will lose profits and goodwill if the Defaulted Defendants' infringement continues, while an injunction will only prohibit the Defaulted Defendants from further infringement. *Wescosign*, 845 F. Supp. 2d. at 1084. There is no indication that any of the Defaulted Defendants will suffer hardship if a permanent injunction is entered. Rather, an injunction will merely assure the Defaulted Defendants' compliance with federal copyright, trademark, and patent law. *Sennheiser Elec. Corp. v. Eichler*, No. CV 12-10809 MMM-PLAX, 2013 WL 3811775, at *11 (C.D. Cal. July 19, 2013).

### 4. Interest of the Public

Finally, the Court concludes that granting Plaintiff's Motion for a permanent injunction will serve the public interest. The "public has an interest in avoiding confusion between two companies' products." *Internet Specialties West, Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009); *see also Suntech Power Holdings Co. v. Shenzhen Xintian Solar Tech. Co.*, No. 08-cv-01582-MLH-NLS, 2009 WL 10671910, at *3 (S.D. Cal. Jan. 29, 2009) ("The removal of infringing products from the market serves the public interest—as does an injunction preventing their reappearance."). "As a result, the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors." *Apple*, 809 F.3d at 647.

Here, the Court finds that a permanent injunction preventing the Defaulted Defendants from selling infringing products will serve the public interest, and there are no "countervailing factors" weighing against issuing an injunction. Accordingly, the Court finds that Plaintiff has met the statutory and equitable requirements for permanent injunctive relief as to the copyright, trademark, and patent violations asserted in the Complaint. *See Adobe Sys., Inc. v. Tilley*, No. 09–cv–1085–PJH, 2010 WL 309249, at *6 (N.D. Cal. Jan. 19, 2010) ("In light of Defendants' past infringement and their failure to appear in this action, injunctive relief is warranted.").

### C. Final Judgment

Finally, Plaintiff has moved for entry of final judgment against the Defaulted Defendants under Federal Rule of Civil Procedure 54(b). (Doc. 125-1 at 11–13.) Rule 54(b) provides that, "[w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. PRO. 54(b). The power to enter separate final judgment on any claim "is largely discretionary" and is "to be exercised in light of judicial administrative interests as well as the equities involved, and giving due weight to the historic federal policy against piecemeal appeals." *Reiter v. Cooper*, 507 U.S. 258, 265 (1993) (citations and internal quotation marks omitted).

The general common law rule is that where defendants are jointly liable, final judgment cannot be entered against one of them until the matter is resolved as to the other defendants. *Frow v. De La Vega*, 82 U.S. 552, 554 (1872). The Ninth Circuit has expanded this rule to include defendants who are similarly situated, even if not jointly liable. *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001). Courts "should not enter a default judgment against one or more defendants which is, or likely to be, inconsistent with judgment on the merits in favor of the remaining answering defendants." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). The

"key question" is "whether under the theory of the complaint, liability of all the defendants must be uniform." *Id*. at 1008.

Here, "the risk of inconsistent judgments is not sufficiently extreme to bar entry of default judgment as a matter of law." *Id*. at 1008–1009. Plaintiff's Complaint alleges that Defendant Taizhou—the only defendant who has yet to default—"manufactures items that infringe Plaintiff's copyrights, trademark rights and patent rights and then the infringing items are sold or distributed in the United States on Amazon and eBay through the established distribution channels of the [Defaulted] Defendants." (Doc. 1 ¶ 4.) On March 4, 2021, the Court granted Plaintiff's motion for summary judgment as to Defendant Taizhou's copyright and patent infringement, and denied Plaintiff's motion with respect to trade dress infringement. (*Id*. at 14.) With respect to the Defaulted Defendants, Plaintiff alleges that the Defaulted Defendants "promoted, offered for sale, sold, and distributed goods infringing Plaintiff's copyrights, trademark rights and patent rights, within this district, through Amazon.com or eBay.com." (*Id*. ¶ 3.) In the August 6 Order, the Court granted Plaintiff's motion for default judgment in favor of the Defaulted Defendants, denying without prejudice Plaintiff's requested relief. (Doc. 120 at 32.)

The Court finds that entering default judgment against the Defaulted Defendants is not logically inconsistent with any judgment against Defendant Taizhou. Defendant Taizhou can successfully defend itself at trial on the issues not otherwise resolved by the Court's summary judgment order (*see* Doc. 118). Additionally, the Court finds final judgment appropriate here, as the Defaulted Defendants have not appeared in this case and the Court previously found that the *Eitel* factors weigh in Plaintiff's favor (*see* Doc. 120). *See Tattersalls Ltd. v. Wiener*, No. 17-CV-1125-BTM, 2019 WL 2209400, at *6 (S.D. Cal. May 21, 2019) (granting default judgment as to fewer than all parties where potentially differing judgment "would not necessarily be illogical, the *Eitel* factors weigh in Plaintiff's favor, and there is no just reason for delay") (citation omitted); *Shanghai Automation*, 194 F. Supp. 2d at 1010 (granting default judgment as to fewer than all parties where "differing judgments against defendant Tsai and the defaulting defendants would not necessarily be

illogical" and where "[n]early all the factors enumerated in *Eitel* . . . militate in Plaintiff's favor"). Because liability of all the Defendants need not be uniform, *id*. at 1008, the Court finds there is no "just reason for delay" in entering final judgment against the Defaulted Defendants.

### III. CONCLUSION

Accordingly, Plaintiff's motion for monetary and injunctive relief against the Defaulted Defendants (Doc. 125) is hereby **GRANTED IN PART AND DENIED IN PART**. Plaintiff is **ORDERED** to file with the Court a proposed final judgment against the Defaulted Defendants in accordance with the terms of this order. Plaintiff shall file the proposed final judgment on or before **June 28, 2022**.

**IT IS SO ORDERED.**

DATE: June 14, 2022

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE